**NAGEL RICE LLP**
Bruce H. Nagel, Esq.
Greg M. Kohn, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
Phone: 973-618-0400
Fax: 973-618-9194
bnagel@nagelrice.com
gkohn@nagelrice.com

**DiSABATO & BOUCKENOOGHE LLC**
David J. DiSabato, Esq.
Lisa R. Bouckenooghe, Esq.
4 Hilltop Road
Mendham, New Jersey 07945
Phone: 973.813.2525
Fax: 973.900.8445
ddisabato@disabatolaw.com
lbouckenooghe@disabatolaw.com
Attorneys for Plaintiffs, on behalf of themselves and the putative class

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABIGAIL BACON, ARCADIA LEE, JEANNINE DEVRIES, LISA GEARY, RICHARD ALEXANDER, YVONNE WHEELER, and GEORGE DAVIDSON, and on behalf of themselves and the putative class, | Civil Action |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| vs. | Case No.: |
| AVIS BUDGET GROUP, INC. and PAYLESS CAR RENTAL, INC. | |
| Defendants. | |

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their

undersigned attorneys, by way of Complaint, state and allege matters pertaining to themselves and

their own acts, upon personal knowledge, and as to all other matters, upon information and belief, based upon the investigation undertaken by their counsel, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action for damages and injunctive relief against Defendants Payless Car Rental, Inc. ("Payless") and Avis Budget Group, Inc. ("Avis") (hereinafter collectively referred to as "Defendants") for Defendants' common course of unlawful and fraudulent conduct.   Specifically, Defendants Payless and Avis uniformly, routinely and systematically impose unauthorized and specifically declined charges on the credit and debit cards of Payless rental customers across the Country.

2.      Plaintiffs, on behalf of themselves and the putative class, bring this suit for violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*. ("CFA"), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. (FDUPTA), the Nevada Deceptive Trade Practices Act, NRS § 598.0903 *et seq*. and Nevada Statutory Consumer Fraud Act, NRS § 41.600 *et seq*. ("NRS"), and other common law claims.

3.      As set forth below, Defendants Payless and Avis have an organized, company-wide scheme to defraud consumers so as to increase revenues.  The scheme is simple – Payless/Avis trick consumers into paying for, among other things, insurance, roadside assistance packages, fuel options, and other "add-ons" that they specifically declined.  These ancillary products (rather than rental revenue) are Payless' bread and butter.

4.      This fraud committed upon its customers is due to, amongst other things, strict and extreme quota requirements, imposed by Avis and Payless management, on its employees.  The quotas force the employees to stoop to ever-lower and lower acts of deception and fraud to ensure that Payless makes money.

5.      In most cases, consumers expressly decline the ancillary products, but Payless/Avis employees simply include the charges anyway, in order to increase the total price, and consequently, the revenue realized by Defendants.

6.      When a consumer declines the ancillary products, the employee verbally confirms that they will not include any additional corresponding fees.  It is not until the rental car is returned (or when the consumer receives his or her credit card statement) that the consumer learns for the first time that he or she has been fleeced by Defendants.

7.      In fact, Defendants defraud its customers by including in the rental form at checkout a section that they require you to sign that accepts a Loss Damage Waiver that you previously declined on the same form.

8.      In addition, Defendants charge consumers for a "fuel surcharge" even when the rental vehicle was returned with a full tank of gas.

9.      Defendants ask consumers whether they want to pay to have them fill the rental vehicle with gas.  Despite consumers declining the option to have Defendants refuel the rental vehicle, Defendants force consumers to accept a "fuel surcharge" that they allege will be refunded when the vehicle is returned with a full tank of gas.

10.     After the vehicle is returned with a full tank of gas, Defendants refuse to refund the "fuel surcharge".

11.     This pattern is so prevalent that since 2013, when Avis acquired Payless, thousands of on-line complaints have been registered, alleging practices ranging from simple unauthorized charges of just a few dollars to outright theft of fictitious "deposits" totaling $500 and more.  All fraudulent practices are part of a concerted, organized enterprise through which Payless and Avis engage in a pattern of deceptive and unlawful conduct to bilk their customers.

12. The pattern of unlawful and fraudulent conduct is almost unlimited in its creativity. The scams take every imaginable form. For example:

(a) Customers are routinely charged amounts as high as $185.00 as an arbitrary "fuel surcharge," even after returning the vehicle with a full tank of gas:

> "It was supposed to be 253.00 and they charged me over 500.00 and I received 2 OD [overdraft] fees for this because other things came out also, so the total I was charged for everything was 590.78 When I requested a receipt they [g]ave me one with an additional charge on their showing 185.00 in Fuel Charges! I had a 4 cylinder Chevrolet Equinox for just shy of 4 days. Even if I filled it up every day it would still not be 185.00 for gas!"

> "I was pre-charged for fuel that was to be reimbursed if the tank was returned full. The return receipt indicated that it was full.  To ask now for a physical receipt that I put gas in my car is absurd.  I do not save those receipts. What you are doing is illegal, but from the reviews on your company this is common practice.." – M. Samuelson

(b) Customers that have fully pre-paid for their rental are told that they failed a "credit check" when they arrive to pick up already paid-for car, and then are told that as a result of alleged credit issues, the customer has technically "cancelled" the rental and thus have forfeited the full amount that they already paid:

> "Payless car ripped off my family for $175.00.  They processed the rental online and when my fiancée went to pick it up they wouldn't give it to her because she didn't pass a credit check.  Why wouldn't Payless car rental check credit before taking the money? Because they know they can rip people off if they do it this way."

(c) Customers are routinely made to wait up to four hours for a reserved car, for the sole and obvious purpose of pressuring them into a more expensive "upgrade" that is available immediately:

> "It took me 4 hours to even get the car because I had to supply them with my utility bills, bank statements and a credit check because I was using a debit card instead of a credit card. [] Also when I picked up the car ((it was a Nissan Murano MidSize SUV)) the tires were completely bald, and this is why I was in an Equinox."

4

(d)     Many of Payless' vehicles are unsafe and not fit for use – countless complaints involve cars with bald tires, expired registrations, broken and leaky windshields:

> *Boss and I enjoying day one of biz trip with a defective, dead car that @paylesscar  wants to charge us to come fix.*

> *@PaylessCar it was so nice of the police to inform me that both tail lights were out and the registration was expired on my rental.*

(e)     When customers complain about a vehicle's condition, Payless charges them for the "cancellation" and uses the opportunity to con them into an "upgraded" car:

> *#TravelTuesday @avis @paylesscar disappointed with my service in Savannah. Prepaid for full size car and they charged me for upgrade to SUV.*

> *@PaylessCar Hey thanks for not having a car available that I had a prepaid reservation for and then refusing to give a refund*

(f)     Payless routinely retains security deposits without justification or explanation:

> *@PaylessCar Can someone please help me get my $500.00 security deposit back on a car rental that was returned Nov. 17th???*

> *@PaylessCar my mother hasn't received her 350.00 deposit back. Its been over 30 days. []*

(g)     Customers frequently discover by chance that their credit cards have been billed as many as three or four times for the same thing by Payless:

> *@paylesscar has charged my card 4 times for the same online rental but their system has denied me each time.*

> *Rental Car agent placed 3 [$200.00] holds on my bank account for one car. Thanks @Payless Car [].  Get what you pay for.*

(h)     Payless commonly represents add-ons as "mandatory" when in fact they are optional, such as roadside assistance services, or additional insurance coverages:

*@PaylessCar I didn't want prepaid fuel. I was told it was mandatory at this location.*

*@PaylessCar Michael at DFW is a liar. Said I had to accept RSP and that was not true.*

(i)     If customers have to use roadside assistance, the service is virtually valueless as they are left stranded and arranging for their own repairs or tow services:

*@PaylessCar if I am murdered while waiting for a new car or blown up in this broken down POS you gave us let m[y] family know I love them*

*Thanks @PaylessCar for giving us a rental w/ shredded tires that left us stranded and ruined our anniversary trip.*

13.     Avis is headquartered in New Jersey, but operates Payless rental locations throughout the Country.  This Complaint includes specific claims arising from conduct occurring in New Jersey, Florida, Nevada, and Costa Rica.  In each instance the fraud is connected to New Jersey by virtue of Avis's participation in the fraudulent enterprise.

## PARTIES

14.     Plaintiff Abigail Bacon, residing at 2181 Bluegrass Lane, Cincinnati, Ohio, is a consumer, a purchase, and a person within the meaning of CFA, N.J.S.A. § 56:8-1(d).  Plaintiff Bacon rented a car from Payless in New, New Jersey and was charged unauthorized fees for add-ons which she had expressly declined.

15.     Plaintiff Arcadia Lee, residing at 17 Mine Street, Apt. 206, New Brunswick, New Jersey, is a consumer, a purchaser and a person within the meaning of the CFA, N.J.S.A. § 56:8-1(d).  Plaintiff Lee rented a car from Payless in Costa Rica and was subjected to unauthorized add-ons under the deceptive pretext that those associated costs were simply "deposits" that would be returned.

16.     Plaintiff Jeannine DeVries, residing at 5665 Barcroft Drive, Wyoming, Michigan, is a consumer and a person within the meaning of NRS §§ 598.0903 and 41.600.  Plaintiff DeVries rented a car from Payless in Las Vegas, Nevada and was charged an unauthorized fee for RSP, which she had expressly declined.

17.     Plaintiff Lisa Geary, residing at 4345 De Volis Parkway, Madison, Wisconsin, is a consumer within the meaning of FDUTPA § 501.203.  Plaintiff Geary rented a car from Payless in Tampa, Florida and was charged unauthorized fees for Loss Damage Waiver ("LDW"), RSP and additional add-ons, all of which she had expressly declined.

18.     Plaintiff Richard Alexander, residing at 19 Bridge Street, Lewiston, Maine, is a consumer and a person within the meaning of NRS §§ 598.0903 and 41.600.  Plaintiff Alexander rented a car from Payless in Las Vegas, Nevada and was charged unauthorized fees for LDW and RSP, both of which he expressly declined, as well as a charge for a pre-paid "Gas Service Option," which was also expressly declined.

19.     Plaintiff Yvonne Wheeler, residing at 7420 Keystone Road, Richmond, Illinois, is a consumer and a person within the meaning of FDUPTA § 502.03.  Plaintiff Wheeler rented a car from Payless in Tampa, Florida and was charged unauthorized fees for RSP, which she repeatedly and expressly declined.

20.     Plaintiff George Davidson, residing at 17885 40 Avenue, Surrey, BC, Canada, is a consumer and a person within the meaning of NRS §§ 598.0903 and 41.600.  Plaintiff Davidson rented a car from Payless in Las Vegas, Nevada and was subject to fraudulent refueling charges.

21.     Defendant Payless Car Rental, Inc. is organized and existing under the laws of the State of Nevada, with its principal place of business located at 6 Sylvan Way, Parsippany, New Jersey 07054.   Defendant Payless is registered with the State of New Jersey and is authorized to

conduct business in the State of New Jersey.  Defendant Payless maintains car rental offices throughout New Jersey, the United States, and around the world, and operates in the "deep-value" segment of the industry.

22.     Defendant Payless has approximately 200 vehicle rental locations worldwide, including approximately 80 Company-owned locations and approximately 100 locations owned by licensees.

23.     Defendant Avis Budget Group, Inc., is organized and existing under the laws of the State of Delaware, with its principal place of business located at 6 Sylvan Way, Parsippany, New Jersey 07054.  Avis is registered with the State of New Jersey and is authorized to conduct business in the State of New Jersey.  Avis maintains car rental offices throughout New Jersey, the United States, and around the world.

24.     Defendant Payless was acquired by Avis in July 2013 and is a wholly owned subsidiary of Avis.  As a result of the acquisition of Payless, Avis' revenue increased by $44 Million in the second half of 2013 alone.

25.     At all relevant times hereto, Payless was and is doing business within this District either directly or indirectly through the use of its car rental services in this District at eleven (11) Payless Car Rental locations as well as its promotional interactive website (www.paylesscar.com), which allows consumers to obtain rates and enter into agreements to rent vehicles from Payless/Avis and thereby engage in transactions in this District.

26.     Notwithstanding corporate formalities, Avis and Payless have combined operations, and at all times material to this litigation, Avis actively directed and controlled the daily activities of Payless and totally dominated it, to the extent that Payless manifested no separate corporate interests of its own and functioned solely to achieve the purposes of Avis.

27.    Avis and Payless have stated in public filings and through other public forums:

    a.  that Payless is a wholly owned subsidiary of Avis and that the acquisition of Payless "allowed Avis to expand [its] presence in the deep-value segment of the car rental industry."

    b.  that Avis' car rental brands, including Payless, "share the same operational and administrative infrastructure."

    c.  that "Payless' business model allows [Avis] to extend the life cycle of a portion of [its] fleet, by allowing [Avis] to "cascade" certain vehicles that exceed certain Avis or Budget age or mileage thresholds to be used by Payless."

    d.  that Avis owns trademarks and logos related to the "Payless Car Rental" brand.

    e.  that Avis and Payless share the same corporate headquarters.

    f.  that Avis arranges for and responds to consumer disputes on behalf of Payless, including the issuance of refunds to consumers who rented vehicles from Payless.

    g.  that Avis will accept and receive the return of rental cars from Payless consumers.

28.    At all times material hereto, Defendants are responsible for the occurrences and damages alleged herein, and that Plaintiffs and Class Members' damages were proximately caused by said Defendants.

29.    At all material times hereto, Defendants acted in concert with the each other, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and were a proximate cause of damages and injury thereby to Plaintiffs and Class members.

30.    At all material times hereto, the acts complained of, and otherwise attributable to each Defendant, were executed and performed by its agents or personnel, which were at the time acting within the scope and actual or apparent authority of Avis and Payless.

31.     As set forth above, at all material times hereto the operations of Avis and Payless were seamlessly integrated and each actively participated in the business practices about which Plaintiffs complain.

32.     Whenever in this Complaint reference is made to any act or omission of a corporate defendant, partnership, or other entity, such allegation shall be deemed to mean that the directors, officers, agents, employees, distributors, partners, contractors, third-party sales agencies or representation of said corporate defendant, partnership or other entity, did, authorize or command such act or omission while actively engaged in the management, operation, control or representation of the affairs of said corporate defendant, partnership or entity, and while acting within the course and scope of their agency, distributorship, contract, employment, representation and capacity.

## JURISDICTION AND VENUE

33.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34.     This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 2201, and pursuant to 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which some members of the class of plaintiffs are citizens of states different from at least one Defendant.  Upon information and belief, there are more than 100 Class members.

35.     This Court has jurisdiction over Avis because it maintains its corporate headquarters and principal place of business in this District; does substantial business in this District; and has registered with the State of New Jersey to conduct business in this District.  Avis maintains car rental offices in several dozen locations in New Jersey.

36.     This Court has jurisdiction over Payless because it maintains its principal place of business in this District; does substantial business in this District; and has registered with the State of New Jersey to conduct business in this District.  Payless maintains car rental offices in several dozen locations in New Jersey.

37.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2), as acts and/or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants maintain and oversee agents or representatives in this District; and Defendants have conducted business activities on an ongoing basis in this District at all times material hereto.

## FACTUAL ALLEGATIONS AND BACKGROUND

38.     Defendant Avis reports revenue from its customers "through the sale and/or rental of **optional** ancillary products and services. Our employees offer products to customers that will enhance their rental experience, including collision and loss damage waivers, insurance products such as additional/supplemental liability insurance or personal accident/effects insurance, products for driving convenience such as portable GPS navigation units, optional roadside assistance services, fuel service options, electronic toll collection and other ancillary products and services, such as access to satellite radio and child safety seats." (emphasis added).

39.     While Payless is branded to capture the "deep-value" segment of the car rental market, Defendant Avis publicly states that "Payless has historically achieved a greater penetration of ancillary products and services with its customers [than larger, more established car rental brands]."

40.     It is the fraudulent and unlawful method through which Payless achieves this "greater penetration of ancillary products and services" that is the gravamen of Plaintiffs' Complaint.

41.     As set forth below, Payless/Avis has organized a scheme to defraud consumers so as to increase revenues.  The scams are uniformly designed to gain access to consumers' credit card or debit card information so as to allow Payless/Avis to bill unauthorized charges, thereby bilking consumers out of their money.  In general, the scams can be divided into two categories:

    a.    Charging for things that are expressly declined by the consumer or never disclosed to the consumer ("Unauthorized Add-Ons")

    b.    Charging consumers for fuel even though the car was returned with a full tank ("Fraudulent Fuel Charges")

42.     The conduct alleged herein is a systematic pattern of conduct that has occurred not just in New Jersey, but at a significant number of Payless/Avis locations.  This practice has allowed Payless/Avis to profit at the direct expense of victimized consumers, including Plaintiffs.

43.     Payless/Avis is aware of these practices, as thousands of complaints similar to those of Plaintiffs have been submitted through Payless' online "ticket" dispute resolution, to consumers' local Attorney Generals, through Social Media postings such as Twitter and Facebook, and through consumer forums such as consumeraffairs.com and the Better Business Bureau ("BBB").

44.      Indeed, Payless' practices have been featured by David Segal, author of "The Haggler" column in the New York Times, in articles titled "A Car Renter's Costly Detour to Collection Center Drive," August 27, 2016; "Bring It Back Full, or Don't, You'll Pay Either Way," July 3, 2016; and "What's Harder than Renting a Car? Filing a Complaint," January 17, 2016.

45.     Payless/Avis's response to these complaints are generally *pro forma.*

46.     Specifically, the response from Payless' twitter account, @PaylessCar, is typically as follows:

        *We're sorry to hear this.  Please open a ticket with our help desk at bit.ly/1NxDLbm and we will look into this.*

Or

*Please call 1.800.729.5377 for immediate assistance.*

47.     If a consumer places a phone call to the 800 number, he or she is typically directed to continue all further communication through an online "ticket" with the help desk.

48.     Once a consumer submits their "ticket" via Payless/Avis' online help desk, the consumer is typically met with the following form response regardless of the complaint made:

> Thank you for renting with Payless, we appreciate the opportunity to address your concern involving coverage.  When renting a vehicle with Payless, you have the option to accept or decline coverage. Coverage is authorized by the renter, and that decision is noted on the rental agreement when the customer signs for the coverage.  We have checked our records carefully and find that the coverage option was offered to you, and you indeed signed the agreement. Once a rental agreement has been completed and services have been rendered we are unable to make any changes or issue refunds.

49.     This form response to consumers' complaints reveals that Payless/Avis is not only aware of consumers from around the country making identical complaints about these scams, but also that Payless/Avis encourages, conspires with its employees, and aids and abets this standard practice of tricking consumers into "authorizing" charges which are neither disclosed nor requested.

50.     The misrepresentations and omissions by Payless include the requirement that a customer authorize the declination and acceptance of the same services on the same form.

```
        RENTAL AGREEMENT NUMBER                    RESERVATION NUMBER
Customer Name    :                          Payless Car Num : 4 6 2 4 6 4 5 4
Drivers Lic Number :                        Plate Number    : CA 7EW3458
Methods of Payment : AMEX                   Veh Description : GRY NISSAN SENTRA 4 DOOR
                                            Odometer Out    : 5633 MIs
                                            Fuel Gauge Reading: Full

Pickup Date/Time : JUL 16,2016@03:06 PM     Return Date/Time : JUL 23,2016@11:00 PM
Pickup Location : 7135 GILESPIE STREET      Return Location : 7135 GILESPIE STREET
                 LAS VEGAS,NV,89109,US                       LAS VEGAS,NV,89109,US

       Additional Fees May Apply If Changes Are Made To Your Return Date, Time And/Or Location.
YOUR ESTIMATED VEHICLE CHARGES              YOUR OPTIONAL PRODUCTS/SERVICES
MIN  148 HRS  MAX   12 DAY                  Loss Damage Waiver        23.95/Day    Declined
    RATE CHART        TIME AND MILEAGE      Personal Accident and Effects  6.00/Day  Declined
HRLY :   14.34  ...                         Emergency Sickness Plan   4.99/Day    Declined
DLY :   43.00       107%   32.43=   32.43   Supplemental Liability Insurance 15.75/Day Declined
AD BY:   32.43                               1 RSP   5.99/DY    41.93/WK {{{{{/MX
WKLY :  129.72      1WK%  129.72=  129.72
MTHLY:                                      Estimated Optional Services Total Taxable:    67.92
MIs : Unlimited                             By my initials I accept or decline optional services/products
Your Estimated Time & Mileage:     162.15   as shown above. X
VEH LICENSE RECOUP  2.26 /DY   +    18.00
10.00% Concession Fee Recoupment   +   22.82 Please return the vehicle with the same fuel level as you
Estimated Optional Services Not Taxable + 47.92 received it. Please provide a receipt for fuel purchased. If you
Estimated Subtotal Charges:        250.97   do not, additional fuel fees may apply:
Sales Tax  8.150%              +     20.45     .3410 per MI or   9.850 per GAL.X
CUSTOMER FACILITY CHG  3.75 /DY +    26.00   I understand that important information on cashless toll roads and
COUNTY SURCHARGE  2.00 /RNT/   +     4.20    e-Toll services can be found at payless.....com/faq.X
STATE SURCHARGE 10.00 /DY      +    25.09
YOUR ESTIMATED TOTAL CHARGES X      330.71

----------NOTICES----------PAYLESS----------NOTICES----------PAYLESS----------NOTICES----------PAYLESS----------NOTICES----------
Loss Damage Waiver is optional. An added daily cost of  23.95 covers your responsibility for damage to our car. Check
with your insurer as this may be duplicative of your own car insurance. I agree the charges listed above are estimates
and that I have reviewed/agreed to all notices/terms here and in the rental jacket.No additional drivers allowed without
prior written consent. Tickets, fines and admin fees to be charged to this rental. X

If you have questions regarding this rental, call us at 702-736-8147    This vehicle was rented to you by 283000
```

51.    Payless/Avis has been aware of these practices at its specific rental locations and has taken no action to prevent this conduct from continuing.

52.    The following is a sample of the hundreds of complaints lodged by consumers against Payless/Avis during the relevant time period through www.consumaraffairs.com alone:

*       *       *

WOW! All these negative reviews and these are the people that take the time to write. This outfit should be put out of business and Avis/Budget Group who owns it should be ashamed. I like what looks like half the world was deceived and defrauded just this week. Agent deceptively added "Loss Damage Waiver Insurance" for $25.99 a day. I rent two cars to get my girls back to school in AZ. Quoted $14.95 a day and had one care 5 days and 1 car 6 days.

What did I end up paying you ask? $459.52 for one compact vehicle and $569 for another.  The deception and tactics used for the insurance I got slammed with (which I very clearly stated I didn't want when picking up the vehicles) cost me over $300. Also, charged me a gas service fee on a vehicle that it returned full. A $67.00 air freshener fee when nobody smoked in the car!! Late returns fees of $44 on each vehicle when I called them and stated I would be keeping the vehicles longer. What we all need to do - which I will be doing is filing a case with the attorney general where I was defrauded. How does an outfit get away with this? Sr. Executives should do jail time. BUNCH OF CROOKS.

*       *       *

Fraudulently added a ton of options at drop off at the Phoenix Airport location. You don't sign a receipt and then fold your copy in an envelope. Added $400 in options and fees to my week long rental.

*       *       *

On 1/23/2016 I booked a car rental reservation for a Midsize car with Payless Car Rental agent located in Tampa Florida. The booking was done through the Expedia website. The price as listed on the website and the rental confirmation was a base price of $135.28 and taxes & fees of $81.22 for a grand total of $201.21. That is the price I agreed upon and that is what I expected to pay.
Upon arrival to pick up the vehicle in the evening of Feb 14th, I was presented with the rental agreement. I clearly stated that I declined all extra services, such as insurance and gasoline filling services, since I have coverage for insurance through my personal auto insurance and through my Citi card. I also fully intended to return rental car with a full tank of gas. I questioned the amount of $322.36 and was told by the female agent "Oh, don't worry about that, nothing gets charged until you return the car. All the amounts are noted as 'estimated' charges." To my knowledge I clearly "DECLINED" all extra services.
I returned the car at the agreed upon time and with a full tank of gas as per agreement. As I was cashing out and received the bill of $294.67 I immediately disputed the amount and told the woman cashing me out that the amount should be $ 201.21. She told me there was nothing she could do about the amount. I asked to speak to a manager. Manager "Jeff" came to the window, but he did not change any of the charges. He told me that he would have to look into it, and since everything is video recorded he explained that he would review the video footage of when I picked up the vehicle and if they had done something in error, they would correct it.

I called multiple times and never was able to reach anyone. I ended up disputing the charge with my credit card company and was rewarded the $93.46 back on my card, but it took a long time and it was a fight. I will NEVER rent from them again and I fully agree with the above reviews regarding their shady tactics. If you were charged extra fees for insurance please dispute the charges on your credit card.

*      *      *

We rented a car from Payless Car Rental at the Tampa airport location. The female employee asked us about our insurance and we gave her the name of our carrier. She also asked us if we wanted to upgrade to another vehicle which would be an additional $3.00 per day, we said no. She then placed several "X"'s on the paper said "initial all "X"'s and sign on bottom". When we returned the car the check-in guy kept our copy of the contract. We were charged an optional service fee of $20.00 (not much compared to what I'm reading about here) but we were never asked if we wanted it.
After several phone calls and postings on their Facebook page they said they don't know what was said at the rental counter so I signed and no refund will be given. I have to wonder what kind of company is this? Isn't there anyone working there that cares about customer service? Is this the way the corporate office is satisfied doing business? And this company is owned by Avis, do they do the same thing to their customers?

*      *      *

We chose Payless because the advertised rate was lower. When we got to the rental counter the employee had us initial a bunch of lines and said it was just policy and we needed to initial whether we used the particular service or not and it would be adjusted at the time we returned the vehicle. We were asked for the ID of those who would be driving, so my wife and I gave our ID. When we turned in the car we were charged $13.00 extra per day for an additional driver. They never mentioned an additional charge for drivers and other companies have not charged for that. Unfortunately we were trying to make our flight and didn't notice the discrepancies until we got to the airport. We could not reach a human and the mailbox was full. We could not find an email address for them either. If you don't like to be ripped off, don't rent with Payless! You won't pay less...

*      *      *

Same as others here -- the $50 cancellation penalty when it was their mistake. On 7/23/16, I made a reservation online for 8/10/16 (17

days in advance) and pre-paid with my debit card. There was nothing on that payment page to indicate that my debit card might be refused at pickup time based on a "credit check". Mind you, I wasn't applying for credit; I had ALREADY paid. (There was a link to Other Terms and Conditions, but there was NO information on the payment page itself.) AFTER I pre-paid, that was the first time that the information was presented that my debit card might be refused at pick-up time. Obviously, that wouldn't be acceptable from a customer point of view -- the plane would land, I'd go to pick up the car, and it would be only then that I would find out they wouldn't let me.

Within a FEW MINUTES of making the reservation, I called Payless on the phone. Both the worker and his supervisor told me I had to pay $50 to cancel, and there was no way to predict whether I would be able to rent the car on the pickup date. Faced with a choice between paying a $50 penalty, or possibly not having a car on August 10th, I canceled the reservation. That is a dirty, dirty way to do business. The condition about the credit check should have been displayed on the payment page. And an immediate cancellation -- 17 days before the pickup -- should not incur a $50 penalty.

The fact that they hide the credit check information behind a link until they already have the money, combined with the fact that they hit the customer who gets caught by this trick with a $50 penalty to cancel, adds up to a dishonest business practice. Obviously, their business model is to offer low prices, and make up their costs on deceitful payment practices. After reading the other reviews here about the rip-offs that happen when the car is actually picked up, I guess I should count myself lucky that I got off with only losing $50 to these scam artists.

*        *        *

After decline the extra coverage a 19.98 fee was added on under the statement that says I accept or decline coverage. I was told to follow up with the manager who never returned my call. I noted 2 other customers having problems with their fees in front of me. I should have noted and walked away. This company in Tampa has been dishonest.

*        *        *

I rented a car with Payless in Las Vegas for 4 days. I should have read the reviews beforehand and I never would have done so. I, too, was charged for RSP (roadside service?) without my knowledge. As I look back at the rental agreement I see that it was included where I initialed. I didn't realize until my return. Instead of a rental fee of

$140.00 it was $174.00. Not worth wasting my time with these shysters, but I will also never rent from them again. I've never had this experience with other rental companies.

## FACTUAL ALLEGATIONS OF NAMED-PLAINTIFFS

### NEVADA TRANSACTIONS

### Plaintiff Richard Alexander

53.     Plaintiff Richard Alexander is a consumer who rented a vehicle for personal use from Defendant Payless at its Las Vegas, Nevada location for the period June 21, 2016 through June 27, 2016.

54.     Plaintiff Alexander reserved his vehicle from Payless through Expedia.com, an online travel agency.  Plaintiff Alexander did not access the Payless website to make his vehicle reservation.  The quoted rental price was approximately $217.00.

55.     At the time of his rental, a Payless employee named Nikko asked Plaintiff Alexander if he would like to purchase optional "Add-Ons," such as the Loss Damage Waiver, Personal Accident and Effects, Emergency Sickness Plan, Roadside Service Protection ("RSP"), and Supplemental Liability Insurance (collectively the "Add Ons").

56.     Plaintiff Alexander expressly declined all the Add-Ons.

57.     Plaintiff Alexander was also asked and expressly declined the Gas Service Option.

58.     Nikko then offered a "free" upgrade to Plaintiff Alexander, and confirmed that the cost for the rental would be the initially agreed-upon price of $217.00.

59.     Plaintiff Alexander was then provided a printed rental agreement.  At the time the rental agreement was provided to him, Nikko circled each area where Mr. Alexander was required to initial the agreement.

60.     The rental agreement is a single page computer-printout describing the basic terms of the car rental.

61.     Plaintiff Alexander relied upon Payless' representation that no Add-Ons were included and that the total cost to him would ultimately only be $217.00.  Payless represented this to be accurate. In reliance upon this, Plaintiff Alexander initialed the rental agreement where told.

62.     It was not until after the transaction was concluded that Plaintiff Alexander was provided with a copy of the rental agreement.  The copy provided, however, was a form rental agreement which did not bear his initials or signature.

63.     Plaintiff Alexander was not provided with a copy of Payless' "Terms and Conditions" until after the completion of the transaction.  Those Terms and Conditions are memorialized in a "Rental Jacket" that is not provided to the consumer until after the transaction is completed, if at all.

64.     Alexander returned the vehicle on June 27, 2016 at approximately 6:00 p.m.  The vehicle was timely returned with no damage and with a full tank of gas.

65.     It was at this time that a Payless representative handed Mr. Alexander a bill. The receipt reflected that Mr. Alexander had been charged $528.29 for the rental – an overcharge of $311.00.  Included in this was the cost of $203.42 for the Loss Damage Waiver and RSP, which were expressly not authorized nor disclosed.

66.     Also included in this was a fee of $35.13 for Gas Service Option.

67.     Plaintiff Alexander's receipt reflects that the vehicle was returned with a full tank of gas.

68.     Plaintiff Alexander contacted Payless to dispute these charges.

69.     To date, Payless has not refunded Plaintiff Alexander's money and retained it for their benefit.

## Plaintiff Jeannine DeVries

70.     Plaintiff Jeannine Devries is a consumer who rented a vehicle for personal use from Defendant Payless at its Las Vegas, Nevada location for the period July 16, 2016 through July 23, 2016.

71.     Plaintiff DeVries reserved her vehicle from Payless through Hotwire.com, on June 20, 2016.  Plaintiff DeVries did not access the Payless website to make her vehicle reservation.  The quoted rental price was $264.23.

72.     Upon arrival at the reservation counter, Plaintiff DeVries was asked if she would like to purchase optional Add Ons.

73.     Plaintiff DeVries expressly declined all Add Ons.

74.     Plaintiff DeVries was then provided a printed rental agreement.  At the time the rental agreement was provided to her, a Payless employee circled each area where she was required to initial the agreement.

75.     Plaintiff DeVries relied upon Payless' representation that no Add Ons were included and that the total cost of the rental would be $264.23.  In reliance upon this, Plaintiff DeVries initialed the rental agreement.

76.     It was not until after the transaction was concluded that Plaintiff DeVries was provided with a copy of the rental agreement.  The copy provided, however, was a form rental agreement which did not bear her initials or signature.

77.     Plaintiff DeVries was not provided with a copy of Payless' "Terms and Conditions" until after the completion of the transaction.

20

78.     Ms. DeVries returned the vehicle on July 23, 2016 at 11:00 p.m.  The vehicle was returned with no damage and with a full tank of gas.

79.     It was at this time that Payless employee Carlos provided Ms. DeVries with a receipt for her rental.  The receipt reflected that she had been charged $330.71.

80.     Ms. DeVries then spoke with the desk agent, identified as agent number 80300, who had rented the car to her initially.  She inquired about the increased rate and was advised that the additional charge of $47.92 had been included for Roadside Service Protection.

81.     Ms. DeVries reminded the agent that she expressly declined all optional products and asked for her money to be refunded.

82.     To date, Payless has not refunded Plaintiff DeVries' money and retained it for their benefit.

**Plaintiff George Davidson**

83.     Plaintiff George Davidson reserved a rental car with Payless through Priceline.com, an online travel agency, for the period June 7, 2016 through June 10, 2016.

84.     Mr. Davidson arrived at the rental counter at the Payless Car Rental location in Las Vegas, Nevada at approximately 2:17 p.m.  Once there, he was met by Payless employee "Allan."

85.     Allan asked Mr. Davidson if he would like to purchase the optional Add Ons.

86.     Mr. Davidson declined all of the Add Ons.

87.     In addition, a Gas Service Option of $39.74 was added at the time of rental that was not previously disclosed, not wanted, and not authorized by Mr. Davidson.  Payless told Mr. Davidson that the Gas Service Option would be refunded as long as the rental vehicle was returned with a full tank of gas.

88.     Relying on this representation, Mr. Davidson proceeded with his rental.

89.     Mr. Davidson then initialed where instructed on the rental agreement.  Allan then took an unsigned copy of rental agreement, folded it up, and placed it in the rental jacket bearing Payless' Terms and Conditions.   The executed copy of the rental agreement was retained by Payless.

90.     On June 10, 2016 at approximately 8:00 p.m., Plaintiff Davidson timely returned the car with a full tank of gas, and a copy of a receipt showing that the gas tank was filled within 15 minutes and 5 miles of drop-off.

91.     Upon returning his car, the car was checked in by a Payless agent in the parking lot.  The agent verbally stated that the fuel gauge reflected that the tank was full.  However, the agent that processed the check-in said the "handheld check in device is broken, so go to the kiosk for your refund."

92.     At the kiosk, Mr. Davidson was told that refunds could only be processed inside at the main counter.

93.     At the main counter, Mr. Davidson was told that only a manager could reverse the Gas Service Option and all managers had left for the day.

94.     The agent at the main counter offered to make a photocopy of the gas receipt and advised that a refund would be processed the next day.

95.     To obtain his refund, Mr. Davidson called the Las Vegas Payless location and left messages for the manager, the main extension, and accounting – none of those calls have been returned. Mr. Davidson also called the telephone number provided on the Payless Rental Jacket, however, that telephone number is for Budget, not Payless. Mr. Davidson has also submitted an online dispute three (3) times.

96.     To date, Payless has not refunded Mr. Davidson's money and retained it for their benefit.

**FLORIDA TRANSACTIONS**

**Plaintiff Lisa Geary**

97.     Plaintiff Lisa Geary is a consumer who rented a vehicle for personal use from Defendant Payless at its Tampa, Florida location for the period June 17, 2016 through June 25, 2016.

98.     Ms. Geary reserved her vehicle from Payless through Expedia.com, an online travel agency.  Ms. Geary did not access the Payless website to make her vehicle reservation.  The quoted rental price was $157.57.

99.     Upon arrival at the reservation counter, Ms. Geary was asked if she would like to purchase the Add Ons.

100.    Ms. Geary expressly declined all the Add Ons.

101.    Ms. Geary was then provided a printed rental agreement.  At the time the rental agreement was provided to her, a Payless representative circled each area where she was required to initial the agreement.

102.    Ms. Geary inquired as to why the total cost exceeded the quoted price of $157.57 by approximately $60.00.  The Payless employee advised and reassured her that this was an "estimated cost in case the car doesn't come back with full gas, etc."

103.    Ms. Geary has no reason to believe that this representation was false.

104.    Ms. Geary relied upon Payless' representation that no Add Ons were included and that the total cost to her would ultimately only be $157.57.  In reliance upon this, Plaintiff Geary initialed the rental agreement where told.

105.     It was not until after the transaction was concluded that Ms. Geary was provided with a copy of the rental agreement.  The copy provided, however, was a form rental agreement which did not bear her initials or signature.

106.     Ms. Geary was not provided with a copy of Payless' "Terms and Conditions" until the after the transaction was completed.

107.     Ms. Geary returned the vehicle on June 25, 2016 at 8:55 a.m.  The vehicle was timely returned with no damage and with a full tank of gas.

108.     When the car was returned, a Payless employee named Jose handed Ms. Geary a receipt showing that she had been charged $309.03, which included the unauthorized and undisclosed fees of $22 for a late fee and $53.91 for RSP.

109.     Ms. Geary disputed this charge with Payless and demanded that her money be refunded.

110.     To date, Payless has not refunded Ms. Geary's money and has retained it for their benefit.

**Plaintiff Yvonne Wheeler**

111.     Plaintiff Yvonne Wheeler is a consumer who rented a vehicle for personal use from Defendant Payless at its Tampa, Florida location for the period July 13, 2016 through July 18, 2016.

112.     Ms. Wheeler reserved her vehicle from Payless through Southwest.com, on June 30, 2016.  Ms. Wheeler did not access the Payless website to make her vehicle reservation.  The quoted rental price was $146.27.

113.     Upon arrival at the reservation counter, Ms. Wheeler was asked by a Payless employee named Emmanuel if she would like to purchase any of the AddOns.

114.     Ms. Wheeler expressly declined all of the Add Ons.

115.     Ms. Wheeler was then provided a printed rental agreement.  At the time the rental agreement was provided to her, Payless employee Emmanuel circled each area where she was required to initial the agreement.

116.     Ms. Wheeler relied upon Payless' representation that no Add Ons were included and that the total cost to her would be $146.27 despite the estimate of $227.75 on the rental form handed to her.  The Payless employee stated that it was simply an "estimate" and that she would not be charged upon return of the vehicle.

117.     Payless represented this to be accurate. In reliance upon this, Ms.  Wheeler initialed the rental agreement.

118.     Ms. Wheeler timely returned her car in optimal condition and with a full tank of gas on July 18, 2016 at 3:34 p.m.

119.     It was at that time that Ms. Wheeler noticed that a charge of $35.94 was included for an Add On that she had expressly declined.

120.     Ms. Wheeler approached the kiosk and asked why was she charged for unauthorized and declined Add Ons.

121.     The rental agent at the counter stated "the charges are what they are" and slammed the kiosk window closed.

122.     Ms. Wheeler then contacted American Express to dispute the imposition of a fee of $35.94 for Roadside Service Protection.

123.     By letter dated August 16, 2016, that dispute was resolved in Ms. Wheeler's favor and she was credited $35.94 by American Express.

124.    Immediately thereafter, she received the following letter from Payless seeking to collect the $35.94 that she was refunded from American Express for the unauthorized charge:

*      *      *

Dear Renter:

Thank you for renting with Payless Car Rental.

Please be advised an adjustment has been made towards your Payless rental. In order to resolve this matter, payment is due upon receipt of this letter.

Here are your payment options:

- To expedite this matter immediately, you may contact us by phone at 1.866.806.3637, option 5.

- To pay via credit card, please complete the back portion of the attached invoice and mail to the remit address provided below.

- Checks can be mailed to the address below referencing the Rental Agreement#.
  **Payless Car Rental Inc.**
  **32691 Collection Center Drive**
  **Chicago, IL 60693**

If you have any questions concerning your rental, please contact us at: Payless Direct Billing P.O. Box 699000 Tulsa, OK 74169 or call 1.800.729.5377, Option 1, then Option 4.

Please be sure to reference your Rental Agreement number on all correspondence and payments sent to us.

Thank you in advance for your payment.

Payless Direct Billing Collections Department
PH# 1.866.806.3637, Option 5

125.    Fearing damage to her credit reputation and/or negative reporting to a credit bureau, Ms. Wheeler remitted payment of $35.94 as instructed.

126.    As a result of this extortion, Ms. Wheeler paid for services that she expressly declined.

127.    To date, Payless has not refunded Ms. Wheeler's money and retained it for their benefit.

## NEW JERSEY TRANSACTIONS

### Plaintiff Abigail Bacon

128.    Plaintiff Abigail Bacon is a consumer who rented a vehicle for personal use from Defendant Payless at its Newark, New Jersey location for the period May 23, 2016 through May 25, 2016.

129.    Ms. Bacon reserved her vehicle from Payless through hotwire.com, on May 22, 2016. Ms. Bacon did not access the Payless website to make her vehicle reservation. The quoted rental price was $199.06.

130.    Upon arrival at the reservation counter, Ms. Bacon was asked if she would like to purchase any "Add-Ons."

131.    Ms. Bacon expressly declined all Add Ons.

132.    Ms. Bacon was then provided a printed rental agreement. At the time the rental agreement was provided to her, the Payless employee circled each area where she was required to initial the agreement.

133.    Ms. Bacon relied upon Payless' representation that no Add-Ons were included and that the total cost to her would be $199.06 and that the cost of $221.42 was simply an "estimate" and would not be charged to her upon return of the vehicle. Payless represented this to be accurate. In reliance upon this, Plaintiff Bacon initialed the rental agreement.

134.    Ms. Bacon was not provided with a copy of Payless' "Terms and Conditions."

135.     Ms. Bacon returned the vehicle on May 25, 2016 pursuant to her rental agreement. The vehicle was returned with no damage and with a full tank of gas.

136.    Ms. Bacon thereafter learned that she had been charged a total of $221.42 for the rental.

137.    Ms. Bacon disputed this charge with Payless and demanded that her money be refunded.

138.    To date, Payless has not refunded Ms. Bacon's money and has retained it for their benefit.

**Plaintiff Arcadia Lee**

139.    Plaintiff Arcadia Lee is a consumer who rented a vehicle for personal use from Defendant Payless at its San Jose, Costa Rica location for the period May 12, 2016 through May 25, 2016, Reservation Agreement Number 59689.

140.    Ms. Lee secured her reservation on May 2, 2016 through CheapOair.com, an online travel agency company.  She did not access the Payless website to make her vehicle reservation. The estimated fee for rental was $285.35, which included car rental, booking fee, travel protection fee, taxes and surcharges.  $140.00 was paid in advance on Ms. Lee's credit card, and the balance was to be paid at the rental counter in San Jose, Costa Rica.

141.    Upon arrival at the reservation counter, on May 12, 2016 at approximately 8:40 a.m., Ms. Lee was helped by a Payless employee named Jose Flores.

142.    Ms. Lee was offered the Add Ons.  Ms. Lee was advised that the cost of these services would increase her total agreed-upon base cost of $285.35 by an additional $200.

143.    In reliance on this representation, Ms. Lee agreed to purchase insurance coverage and GPS service.

144.   Ms. Lee was then provided a printed rental agreement.  At the time the rental agreement was provided to her, Payless' employee Jose marked an "X" next to each area where she was required to initial the agreement.

145.   Ms. Lee expressly inquired why, if her now-agreed upon price for rental vehicle plus Add-Ons is $485.00, the Total Amount Due on the Rental Agreement reached $985.22.

146.   Ms. Lee was then told that the difference between the agreed upon price and the Total Amount Due of $985.22 was a $500 "security deposit" or "hold" on her credit card that would be released within 48 hours of the return of the vehicle if it is returned in the same condition it was rented to her.

147.   In reliance on Payless' representations that the total amount due of $985.22 was largely comprised on a $500 refundable security deposit, Ms. Lee initialed the rental agreement.

148.   Payless retained the copy of the rental agreement bearing her initials. Ms. Lee was provided with a "clean" or unexecuted copy at the conclusion of the transaction.

149.   The copy of the rental agreement bearing Ms. Lee's initials was retained by Payless as part of its pattern and practice.

150.   Ms. Lee was not provided with a copy of Payless' "Terms and Conditions" until after the conclusion of the transaction.  The copy provided was a non-English copy, despite the fact that the entire transaction had been conducted in English, Ms. Lee's native tongue.

151.   On May 25, 2016, at approximately 8:22 a.m., Ms. Lee returned the vehicle with a full tank of fuel and in optimal condition.   She confirmed with a Payless employee named Eddie Hidalgo that the $500 "hold" would be released within 48 hours. Mr. Hidalgo agreed.

152.   However, sometime thereafter, upon examination of her credit card, Ms. Lee determined that Payless had charged her credit card a whopping total of $1,129.57

29

153.    It was then that she discovered that Payless charged her $804.96 for the Add Ons that she was told cost $200.00.

154.    Had the cost of the Add Ons been accurately disclosed to Ms. Lee, she would have declined them.

155.    Ms. Lee also noticed that Payless had billed her twice for the base rental cost of $144.35.

156.    Ms. Lee contacted Payless/Avis and told them of the misrepresentations made by their employees and the overcharges for her rental and demanded to be refunded her money.

157.    To date, Defendants have failed to refund Ms. Lee for the unauthorized charges and have retained her money for their benefit.

## CLASS ALLEGATIONS

158.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

**The Nationwide Unauthorized Add-Ons Class**

All consumers who rented a vehicle from Payless/Avis and were charged for Add-Ons that were specifically declined or were not authorized, including Loss Damage Waiver, Personal Accident and Effects Coverage, Emergency Sickness Plan, Supplemental Liability Insurance or Roadside Service Protection, during the period from the date of the filing of this Complaint and six years prior.

**The New Jersey Unauthorized Add-Ons Subclass**

All individuals who reside in New Jersey and rented a vehicle from Payless/Avis or who rented vehicles from Payless/Avis within New Jersey who were charged for Add-Ons that

were specifically declined or were not authorized, including Loss Damage Waiver, Personal Accident and Effects Coverage, Emergency Sickness Plan, Supplemental Liability Insurance or Roadside Service Protection, during the period from the date of the filing of this Complaint and six years prior.

**The Nevada Unauthorized Add-Ons Subclass**

All individuals who reside in Nevada and rented a vehicle from Payless/Avis or who rented vehicles from Payless/Avis within Nevada who were charged for Add-Ons that were specifically declined or were not authorized, including Loss Damage Waiver, Personal Accident and Effects Coverage, Emergency Sickness Plan, Supplemental Liability Insurance or Roadside Service Protection, during the period from the date of the filing of this Complaint and six years prior.

**The Florida Unauthorized Add-Ons Subclass**

All individuals who reside in Florida and rented a vehicle from Payless/Avis or who rented vehicles from Payless/Avis within Florida who were charged for Add-Ons that were specifically declined or were not authorized, including Loss Damage Waiver, Personal Accident and Effects Coverage, Emergency Sickness Plan, Supplemental Liability Insurance or Roadside Service Protection, during the period from the date of the filing of this Complaint and six years prior.

**The Nationwide Fraudulent Fuel Charges Class**

All individuals who rented a vehicle from Payless/Avis, declined the option to have Payless/Avis refuel the vehicle, returned the rental vehicle to Payless/Avis with a full tank of gas, and were charged by Payless/Avis for refueling, during the period from the date of the filing of this Complaint and six years prior..

31

159.     Excluded from the Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

160.     **Numerosity**: The members of the Class are so numerous and geographically diverse that joinder of them all is impracticable. Plaintiffs believe that the Class encompasses many hundreds and perhaps thousands of individuals whose identities can be readily ascertained from Defendants' records.  Class Members can be notified of this class action via publication and U.S. mail, e-mail, social media forums, and at addresses which Defendants have in their business records or records in their possession, custody or control.  The exact size of the Class can be ascertained through appropriate discovery and class notice, but due to the nature of the trade and commerce involved in Defendants' extensive rental car program, Plaintiffs believe that the proposed Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

161.     **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether Avis' and Payless' violated the New Jersey Consumer Fraud Act, the Florida Unfair and Deceptive Trade Practices Act, the Nevada Deceptive Practices Act and New York's General Business Law, Sec. 349;

b.     Whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

c.     Whether Avis and Payless have been unjustly enriched;

32

d.  Whether Avis and Payless intentionally deprived Plaintiffs and Class Members to their rights to their property by taking control of it or otherwise exercising dominion and control over;

e.  Whether, as a result of Payless' and Avis' actions, Plaintiffs and the other members of the Class have suffered ascertainable losses, and whether Plaintiffs and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief; and

f.  Whether Payless' and Avis' acts and/or omissions entitle Plaintiffs and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.

162.  **Typicality**: The claims of the individual named Plaintiffs are typical of the claims of the Class in that Plaintiffs allege a common course of conduct by Defendants toward members of the Class.  Without consent or authorization, Plaintiffs have been charged undisclosed and/or unauthorized fees for use of Payless/Avis rental cars.  Plaintiffs and the other members of the Class seek identical remedies under identical legal theories, and Plaintiffs' claims do not conflict with the interests of any other members of the Class in that the Plaintiffs and the other members of the Class were subject to the same conduct and suffered the same harm.

163.  **Adequacy**:  The individual named Plaintiffs will fairly and adequately represent the interests of the Class.  Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are highly qualified to pursue this litigation and have experience in class actions, including consumer protection actions.

164.  **Superiority**: Certification under Rule 23(b)(3) will also be appropriate because a class action is superior to other available methods for the fair and efficient adjudication of this controversy given the relatively small amount of fees imposed on consumers, the complexity of the issues involved in this litigation, the enormity of Defendants' business, and the significant costs of litigation, and absent a class action, it is very likely prosecution of the claims set forth herein

would not occur.   Furthermore, since joinder of all members is impracticable, a class action will allow for an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

165.    **Rule 23(b)(2):** As an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification will be warranted under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing imposition and collection of undisclosed and unauthorized fees, and to order Defendants to provide notice that the fees they paid were unlawful and of their potential right to reimbursement of the fees from Defendants.

166.    Because Plaintiffs seek injunctive relief for Class Members, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendants.   Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

167.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

168.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

A.  **Claims Brought on Behalf of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class**

**COUNT ONE**
**(New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (the "CFA")**

169.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

170.     This claim is brought on behalf of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class.

171.     Plaintiffs are persons and consumers pursuant to N.J.S.A. § 56:8-1(d).

172.     N.J.S.A. § 56:8-2 provides that Defendants have a duty not to engage in "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise…"

173.     Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and renting of cars in violation of the New Jersey Consumer Fraud Act ("CFA").

174.     Defendants violated the CFA by engaging in the pattern and practice of deceiving, misleading, misrepresenting, and/or knowingly concealing material facts regarding the services and fees that would be imposed on Plaintiffs and other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class.  Defendants' conduct lacks honesty in fact, fair dealing and good faith and has the capacity to mislead consumers acting reasonably.

175.    As set forth above, Defendants violated the CFA by knowingly omitting material facts regarding the: (a) Fuel Policy; (b) Cancellation Policy; (c) Optional Services, such a Roadside Service Protection; and (d) the imposition of charges for ancillary insurance products. Defendants uniformly did not disclose to Plaintiffs and other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class that they would be charged for Add-ons that were expressly declined and unauthorized.

176.    Moreover, Defendants also violated the CFA by misrepresenting material facts to Plaintiffs and other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class regarding the (a) Fuel Policy; (b) Cancellation Policy; (c) Optional Services, such a Roadside Service Protection; and (d) the imposition of charges for ancillary insurance products.  Defendants uniformly mislead, misrepresented, and/or lied regarding the imposition of fees relating to these services and/or Payless/Avis' corporate policy with respect to these charges.

177.    Defendants intended that Plaintiffs and other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class would rely upon its acts of misrepresentation and omission by renting the vehicles.

178.    Defendants' unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.  The fact that Defendants failed to disclose their charges, charged unauthorized fees, and charged customers for services they declined are material facts that a reasonable and/or unsophisticated consumer would attach importance to at the time of renting a vehicle.  These facts would influence a reasonable consumer's choice of action during renting a vehicle.

179.    Such practices contravene the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, et seq.

180.    N.J.S.A. § 56:8-2.11 provides that "Any person violating the provisions of the CFA shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful."

181.    As a direct and proximate result of Defendants' violations of the CFA, Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class have suffered ascertainable losses, which include but are not limited to, the amount of the unauthorized and undisclosed charges.

182.    As a result of Defendants' violation of the CFA, Defendants are liable to Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class.

<u>**COUNT TWO**</u>
<u>**(Injunctive Relief)**</u>

183.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

184.    This claim is brought on behalf of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class and the Rule 23(b)(2) Class Members set forth above.

185.    The Payless/Avis rental agreement and the CFA create contractual or statutory duties for Defendants which they owe to Plaintiffs and Class Members, and they create legal rights for Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class and the Rule 23(b)(2) Class Members.

186.    The CFA imposes on Defendants a duty not to engage in omissions of material fact, unconscionable commercial practices or deceptive acts or practices.   As set forth above, Defendants have violated that duty, injured Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class thereby, and violated one or more of their cognizable legal rights.

187.    Upon information and belief, Defendants continue to impose the unlawful fees in the manner described above.  Defendants continue to retain monies due and owing Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class.

188.    Defendants' acts and conduct have caused Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class to be aggrieved, and unless enjoined by the Court, Defendants will continue to cause harm and damages to Plaintiffs, the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class, and future Payless/Avis customers.

189.    Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class have no fully adequate remedy at law by virtue of Defendants' ongoing course of conduct.

190.    Irreparable injury will be suffered unless an injunction issues to prevent Defendants from continuing their improper actions, including imposing their unlawful fees.

191.    Any potential injury to Defendants attributable to an injunction is outweighed by the injury that Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

**COUNT THREE**
**(Unjust Enrichment)**

192.   Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

193.   This class is brought on behalf of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class.

194.   Defendant's acts and/or omissions allowed them to gain millions of dollars in profits that would not have been gained, but for their wrongful conduct.

195.   As a result of the unlawful and unconscionable practices of the Defendants as described in the preceding paragraphs, the Defendants have obtained and retained significant monies to which they have no lawful claim, and have accordingly been unjustly enriched.

196.   Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class suffered damages as a result.

197.   By and through the various practices described herein, Defendants received and continue to receive a non-gratuitous benefit, retention of which without disgorgement of its illgotten profits is unjust.

198.   The Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class reasonably expect and expected that Defendants would only charge fees for a service for which they agreed to be charged, or would only charge fees for a service in accordance with Payless/Avis' Policies, and as Defendants have acted beyond the bounds of commercial reasonableness and fairness and without a legally enforceable contractual right to do so, Defendants have been unjustly enriched beyond the bounds of its rights.

199.    Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class seek disgorgement of all unjustly retained profits which have been obtained through Defendants' unfair, unlawful, misleading and deceptive means described with particularity in the foregoing paragraphs of this Complaint.

200.    Defendants' collection and retention of the fees outlined herein violates the fundamental principles of justice, equity, and good conscience and unjustly enriches Defendants.

## COUNT FOUR
### (Conversion)

201.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

202.    This claim is brought on behalf of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class

203.    Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class have a property interest in their money.  They also possess a property interest in their level of available credit and/or account balances.

204.    Defendants intentionally deprived Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class to their rights to the above property by taking control of it or otherwise exercising dominion and control over it.

205.    Specifically, Defendants deprived Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class of their property by charging their debit and credit accounts without notice or authorization.

206.    Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class demanded that Defendants return the money,

but Defendants have failed and refused to return it and have converted the property to their own use.

207.    As a result of Defendants' conversion, Plaintiffs and the other members of the Nationwide Unauthorized Add-Ons Class and the Nationwide Fraudulent Fuel Charge Class were damaged.

**B.   Claims Brought on Behalf of the New Jersey Unauthorized Add-Ons Subclass**

**COUNT FIVE**
**(New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (the "CFA")**

208.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

209.    This claim is brought on behalf of the New Jersey Unauthorized Add-Ons Subclass.

210.    Plaintiffs are persons and consumers pursuant to N.J.S.A. § 56:8-1(d).

211.    Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and renting of cars in violation the CFA.

212.    Defendants violated the CFA by engaging in the pattern and practice of deceiving, misleading, misrepresenting, and/or knowingly concealing material facts regarding the services and fees that would be imposed on Ms. Bacon and Ms. Lee and other members of the New Jersey Unauthorized Add-Ons Subclass.  Defendants' conduct lacks honesty in fact, fair dealing and good faith and has the capacity to mislead consumers acting reasonably.

213.    As set forth above, Defendants violated the CFA by knowingly omitting material facts regarding the Unauthorized Add-Ons.  Defendants uniformly did not disclose to Ms. Bacon and Ms. Lee and other members of the New Jersey Unauthorized Add-Ons that they would be charged for add-ons that they declined.

214.    Moreover, Payless/Avis also violated the CFA by misrepresenting material facts to Ms. Bacon and Ms. Lee and other members of the New Jersey Unauthorized Add-Ons Subclass regarding the option add-ons, such as by stating that these fees would be refunded or were deposits that would be returned.  Defendants uniformly mislead, misrepresented, and/or lied regarding the imposition of fees relating to the Unauthorized Add-Ons and/or Payless/Avis' corporate policy with respect to these charges.

215.    Defendants intended that Ms. Bacon and Ms. Lee and other members of the New Jersey Unauthorized Add-Ons Subclass would rely upon its acts of misrepresentation and omission by renting the vehicles.

216.    Defendants' unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.  The fact that Defendants failed to disclose their charges, charged unauthorized fees, and charged customers for services they declined are material facts that a reasonable and/or unsophisticated consumer would attach importance to at the time of renting a vehicle.  These facts would influence a reasonable consumer's choice of action during renting a vehicle.

217.    Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

218.    As a direct and proximate result of Defendants' violations of the CFA, Ms. Bacon, Ms. Lee and the other members of the New Jersey Unauthorized Add-Ons Subclass have suffered ascertainable losses, which include but are not limited to, the amount of the unauthorized and undisclosed charges.

219.    Specifically, Ms. Lee suffered an ascertainable loss in the amount of at least $500.

220. The approximately $500 is made up of the undisclosed cost of the add-ons Defendants charged her and were not authorized.

221. That money was wrongfully retained and never returned by Payless/Avis in connection with Ms. Lee's rental.

222. The loss suffered by Ms. Lee was caused exclusively by the conduct and actions of Payless/Avis, in that but-for Defendants' representation that the $500 would be refunded upon return of the rental vehicle in an undamaged condition, Ms. Lee would not have tendered the money to Defendants in the first place.

223. In addition, Ms. Bacon suffered an ascertainable loss in the amount of at least $22.36.

224. The approximately $22 is made up of the undisclosed cost of the add-ons Defendants charged her and were not authorized.

**C. Claims Brought on Behalf of the Florida Unauthorized Add-Ons Subclass**

**COUNT SIX**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),**
**Fla. Stat. § 501.201, *et seq*.)**

225. Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

226. This claim is brought on behalf of the Florida Unauthorized Add-Ons Subclass.

227. This is an action for damages for violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 to 501.213) ("FDUTPA").

228. The express purpose of FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  §501.202(2).

229.    The FDUPTA at Section 501.20(1) declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

230.    The rental of vehicles to consumers for personal use is a "consumer transaction[s]" in the scope of FDUPTA.

231.    Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass are "consumers" as defined by FDUPTA §501.203.

232.    The rental vehicles are goods within the meaning of FDUPTA and the Defendants are engaged in trade or commerce within the meaning of FDUPTA.

233.    The conduct, misrepresentations, and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did mislead reasonable consumers, such as Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass, and therefore, violate the FDUPTA.

234.    Defendants have violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

235.    Specifically, Defendants have by affirmative misrepresentations and omissions of material fact represented and led Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass to believe that they were not being charged for add-ons, when in fact Defendants were surreptitiously assessing those unauthorized and expressly declined charges.

236.    Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass have been aggrieved by the Defendants' unfair and deceptive practices in

violation of FDUPTA, in that Plaintiff Geary was charged $78.91 in unauthorized and undisclosed fees for Unauthorized Add-Ons. Similarly, Plaintiff Wheeler was charged $35.94 in unauthorized and undisclosed fees for  Unauthorized Add-Ons.

237.     Reasonable consumers rely on the Defendants to honestly represent and not conceal the true nature and amount of the fees associated with a vehicle rental and any Add Ons.

238.     The Defendants have deceived reasonable consumers, like Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass, into believing when an Add-On is declined, Defendants will not charge them for the declined and unauthorized product or service.

239.     The knowledge required to discern the substance of Defendants' fraudulent and deceptive practice is beyond that of the reasonable consumer, in that the Add-On charges and calculations are of a unique nature that is foreign to the average consumer.  As such, the reasonable consumer does not possess the knowledge necessary to discern between acceptable charges and those that are fraudulent.

240.     Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass have sustained damages as a direct and proximate result of the Defendants' tortious conduct.  Had the Defendants revealed that they intended to assess charges that were either unnecessary or explicitly declined, Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass would not have rented their vehicle from Payless/Avis.

241.     Had Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass known the true nature of Payless/Avis' practices as described above, they would not have entered into the rental agreement at all.

242.    Payless/Avis' conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

243.    As a direct and proximate result of Payless/Avis' misleading and unfair acts, Plaintiffs Geary and Wheeler and the other members of the Florida Unauthorized Add-Ons Subclass have been damaged and are entitled to actual damages in an amount to be determined at trial, but not less than the amount paid by members of the Florida Unauthorized Add-Ons Subclass for the Unauthorized Add-Ons, as well as attorneys' fees and costs.

D.  **Claims Brought on Behalf of the Nevada Unauthorized Add-Ons Subclass**

**COUNT SEVEN**
**(Violation of the Nevada Deceptive Trade Practices Act, NRS § 598.0903 *et seq.*)**

244.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

245.    This claim is brought on behalf of the Nevada Unauthorized Add-Ons Subclass.

246.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits any person from engaging in deceptive trade practices in the sale of any goods. Deceptive trade practices includes "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model;" "makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions;" "fraudulently alters any contract, written estimate of repair, written statement of charges or other document in connection with the sale or lease of goods or services;" "knowingly

makes any other false representation in a transaction;" and "[a]dvertises goods or services with intent not to sell or lease them as advertised." NRS § 598.0915(5), (7), (9), (13-15). Defendants violated the Nevada DTPA by engaging in deceptive trade practices by charging consumers for Unauthorized Add-Ons and misleading consumers into believing that they would receive a refund for unauthorized fees.

247.    Defendants engaged in deceptive trade practices that violated the Nevada DTPA, including:

a.    Knowingly representing to consumers that the costs assessed were refundable or for refundable products;

b.    Knowingly making false representations regarding the Unauthorized Add-Ons;

c.    Representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not;

d.    Knowingly making other false representations in a transaction;

e.    Knowing that the rental agreement was not as it was represented to consumers; and

f.    Knowingly failing to disclose the assessment of fees in connection with the rental of the car.

248.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

249.    Defendants knew or should have known that their conduct violated the Nevada DTPA.

250.    Defendants' unfair or deceptive acts or practices, including the aforementioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable

consumers, including Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass.

251.    Defendants had a statutory duty to refrain from unfair and/or deceptive trade practices in connection with the rental of vehicles to Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass.

252.    Defendants engaged in wrongful conduct by imposing unauthorized and/or improper charges on the credit cards of Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass to obtain significant sums of money.

253.    Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of Defendants' conduct, Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass would have paid significantly less for their rental vehicles or not rented the vehicle.  Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass did not receive the benefit of their bargain as a result of Defendants' misconduct.

254.    Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass risk irreparable injury as a result of Defendants' acts and omissions in violation of the Nevada DTPA, and these violations present a continuing risk to Plaintiffs Alexander, Davidson and DeVries, the other members of the Nevada Unauthorized Add-Ons Subclass and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

255.    As a direct and proximate result of Defendants' violations of the Nevada DTPA, Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass have suffered injury-in-fact and/or actual damage

256.    Accordingly, Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act. Nev. Rev. Stat. § 598.777.

## COUNT EIGHT
### (Violation of the Nevada Statutory Consumer Fraud Act, NRS § 41.600 *et seq.*)

257.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

258.    This claim is brought on behalf of the Nevada Unauthorized Add-Ons Subclass.

259.    Pursuant to NRS §§41.600(2)(e), 598.0915, and 598.0923, Defendants knowingly engaged in predatory, wrongful, fraudulent and deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act by engaging in certain prohibited conduct, including but not limited to:

A.    Engaging in a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive [See NRS 41.600(2)(e)].

B.    Failing to disclose a material fact in connection with the sale or ancillary products in connection with the rental of a motor vehicle goods. [NRS 598.0923(2)].

C.    Making any other false representation in a transaction. [NRS 598.0915(15)].

260.    As a direct and proximate cause of the Defendants' deceptive trade practices/consumer fraud, as herein alleged, Plaintiffs Alexander, Davidson and DeVries and the

other members of the Nevada Unauthorized Add-Ons Subclass have been damaged. Defendants in making the aforementioned material misrepresentations and/or concealing material facts from Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass concerning the cost of the Add Ons, the representations that the Add Ons would be refunded, and charging for Unauthorized Add-Ons, have acted willfully, intentionally, maliciously and fraudulently, with intent to deceive and defraud Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass with great recklessness and carelessness in total disregard of the consequences of their intentional actions upon Plaintiffs Alexander, Davidson and DeVries and the other members of the Nevada Unauthorized Add-Ons Subclass, thereby entitling them to actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under Nev. Rev. Stat. § 41.600, et seq.

**WHEREFORE**, Plaintiffs, on behalf of themselves, The Nationwide Fraudulent Fuel Charges Class, The Nationwide Unauthorized Add-Ons Class, The Florida Unauthorized Add-Ons Subclass, The Nevada Unauthorized Add-Ons Subclass, The New Jersey Unauthorized Add-Ons Subclass, and all others similarly situated, demands judgment against the Defendants, as follows:

(A)     Certifying Classes, as defined herein, pursuant to Fed. Civ. P. Rule 23(b)(2) and (3), and naming Plaintiffs as class representatives and their counsel of record as Class Counsel;

(B)     On behalf of the Classes, for injunctive relief prohibiting Defendants from future violations of the CFA, FDUTPA, and NRS and enjoining Defendants from charging credit cards and/or debit accounts without notice and/or specific authorizations for the charges to be imposed;

(C)     Enjoining Defendants from continuing to mislead, misrepresent, and/or omit the

basis for fees imposed and requiring Defendants to provide notice to Class Members about their potential rights to have the fees refunded;

(D)      Disgorgement and restitution to Plaintiffs and the Class Members of all monies received or collected from Plaintiffs and the Class Members for violative fees;

(E)      Awarding actual, consequently, punitive, statutory, and treble damages, jointly and severally, as to all Defendants;

(F)      Awarding all damages allowed by common law, statute, and otherwise;

(G)      Awarding reasonable costs and attorneys' fees;

(H)      Awarding applicable pre-judgment and post-judgment interest;

(I)      On behalf of Plaintiffs and the Classes, for such other and further relief as they may be entitled or as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**DATED:** September 26, 2016          **NAGEL RICE, LLP**

By:   __s/ *Bruce H. Nagel*___
                 Bruce H. Nagel
                 Greg M. Kohn
                 103 Eisenhower Parkway
                 Roseland, New Jersey 07068
                 973-618-0400
                 bnagel@nagelrice.com
                 gkohn@nagelrice.com

**DiSABATO & BOUCKENOOGHE LLC**

By:   __s/ *David J. DiSabato*___

51

David J. DiSabato, Esq.
Lisa R. Bouckenooghe, Esq.
4 Hilltop Road
Mendham, New Jersey 07945
Tel.: 973-813-2525
Fax: 973-900-8445
ddisabato@disabatolaw.com
lbouckenooghe@disabatolaw.com

*Attorneys for Plaintiffs and the Putative Class*