## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ABIGAIL BACON, et al.,**

       **Plaintiffs,**

       **v.**

**AVIS BUDGET GROUP, INC., and
PAYLESS CAR RENTAL, INC.,**

       **Defendants.**

Civ. No. 16-5939 (KM) (JBC)

**MEMORANDUM OPINION**

**MCNULTY, U.S.D.J.:**

The plaintiffs have filed a putative class action against car rental companies Avis Budget Group, Inc. ("Avis") and an Avis subsidiary, Payless Auto Rental, Inc. ("Payless"). Essentially the complaint alleges that the defendant rent-a-car companies routinely charge customers' credit and debit cards for ancillary products and services that the customers have not authorized, and in some cases, have specifically declined. The plaintiffs assert claims under New Jersey, Florida, and Nevada consumer protection and unfair trade practices statutes, for injunctive relief, for unjust enrichment, and for conversion. (*See* Compl.)[1] Plaintiffs propose to certify a class action comprising five subclasses.

---

[1]     Certain record items repeatedly cited are abbreviated as follows:

Compl. = Complaint, ECF No. 1

Def. Br. = Memorandum of Law in Support of Motion to Compel Arbitration Filed on Behalf of Defendants Avis Budget Group, Inc. and Payless Car Rental, Inc., ECF No. 16-1

Def. Cert. = Certification of Kellie A. Lavery in Support of Defendants Avis Budget Group, Inc. and Payless Car Rental, Inc.'s Motion to Compel Arbitration, ECF No. 16-2

Presently before the court are two motions to compel arbitration: one submitted by Payless (joined by Avis) (ECF No. 16), and another submitted jointly by Avis and Payless (ECF no. 17). (*See* Def. Br. 7.) The first, Payless motion deals with plaintiff Arcadia Lee, who rented a car for use in Costa Rica; the second, joint motion deals with the remaining plaintiffs, whose rentals occurred in New Jersey, Nevada, or Florida (the "U.S. Plaintiffs").[2] Both motions seek an order compelling the plaintiffs to arbitrate their claims on an individual basis, as well as dismissal of the Complaint or stay of this action pending arbitration. Because the defendants' motions present issues of fact, I will deny them as presented and order discovery.

## I.    BACKGROUND

### A. The U.S. Plaintiffs' Rental Agreements and Rental Jackets

The six U.S. Plaintiffs signed one-page rental agreements (the "U.S. Agreements") for Payless cars. Each plaintiff's signature appears immediately below the final paragraph of the U.S. Agreement which states, in part, "I have received&agree to all notices&terms here and in the rental jacket." (Spacing *sic* in original). The Defendants attach copies of the U.S. Agreements as exhibits to certifications submitted with their opening briefs. Also attached are copies of

---

Payless Br. = Memorandum of Law in Support of Motion to Compel Arbitration Filed on Behalf of Defendant Payless Car Rental, Inc., ECF No. 17-1

Payless Cert. = Certification of Kellie A. Lavery in Support of Defendant Payless Car Rental, Inc.'s Motion to Compel Arbitration, ECF No. 17-2

Opp. = Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration, ECF No. 21

Payless Reply = Reply Memorandum of Law in Support of Defendant Payless Car Rental, Inc.'s Motion to Compel Arbitration, ECF No. 22

Sur-Reply = Sur-Reply In Response to Defendants' Motions to Compel Arbitration, ECF No. 29

[2]    These plaintiffs are Abigail Bacon, Jeannine DeVries, Lisa Geary, Richard Alexander, Yvonne Wheeler, and George Davidson.

the "rental jackets" mentioned in the Agreements (the "U.S. Rental Jackets"). (Payless Cert. Exs. A–F)[3]

Each U.S. Agreement is essentially a one-page receipt. It itemizes charges and fees, lists basic identification information about the customer and the rented vehicle, and identifies pickup details for the rented vehicle. (*Id.*)

The U.S. Agreements' Rental Jackets, so called, are not actually titled as such, but bear the title "Rental Terms and Conditions." Each includes some 31 paragraphs of terms and conditions in small but legible print. The terms and conditions are substantially the same across all six U.S. Rental Jackets. Each includes an arbitration provision, which states, in relevant part:

> 28. Arbitration.
>
> . . . .
>
> Dispute Resolution: Except as otherwise provided below, in the event of a dispute that cannot be resolved informally through the pre-dispute resolution procedure, all disputes between you and Payless arising out of, relating to or in connection with your rental of a vehicle from Payless and these rental terms and conditions shall be exclusively settled through binding arbitration through the American Arbitration Association ("AAA") pursuant to the AAA's then-current rules for commercial arbitration. There is no judge or jury in arbitration. Arbitration procedures are simpler and more limited than rules applicable in court and review by a court is limited. YOU AND PAYLESS AGREE THAT ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS

---

[3] I properly consider the rental agreements and rental jackets appended to the defendants' briefs because the plaintiffs refer to them in the Complaint and they are integral to the plaintiffs' claims. (*See, e.g.*, Compl. ¶¶ 50, 59, 60–62, 74–76, 89, 101, 104–105, 115, 117, 133) *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

AND NOT IN A CLASS, CONSOLIDATED OR
REPRESENTATIVE ACTION. Notwithstanding any
provision in these terms to the contrary, if the class
action wavier in the prior sentence is deemed invalid or
unenforceable, however, neither you nor we are
entitled to arbitration. . . .

(*Id.* ¶ 28).

Most of the U.S. Plaintiffs allege that they received the U.S. Rental
Jackets only after they had signed the U.S. Rental Agreements.[4]

## B. Lee's Costa Rica Rental Agreement and Rental Jacket

Lee rented a car in Costa Rica from Payless's licensee, Las Cuatro Vias,
S.A. ("LCV"). (Compl. ¶ 139) Lee also signed a one-page, receipt-like agreement
(the "Costa Rica Agreement"), which bears a Payless logo and LCV's title and
address at the top of the page. The Costa Rica Agreement states: "By signing
below, you agree to the terms and conditions of this Agreement, and you
acknowledge that you have been given an opportunity to read this Agreement
before being asked to sign." (Def. Cert. Ex. G, p.2) Just underneath that
sentence, Lee's signature appears.

The Costa Rica Agreement does not refer to a rental jacket or to any
other "rental agreement." (The Defendants append a copy of the Costa Rica
Agreement as Exhibit G to the certification submitted with their brief. (*Id.*))
Within that Exhibit G, on the page following the Costa Rica Agreement, is a
document that bears the title "Rental Agreement." This document comprises 21
paragraphs in English and 21 paragraphs in Spanish on a single page. (I will
call it the "Costa Rica Rental Jacket".)[5] The writing is so small that it is nearly

---

[4]     Specifically, the Complaint alleges that Alexander, DeVries, and Geary did not
receive a copy of their U.S. Rental Jackets until after they had signed their U.S.
Agreements. (Compl. ¶¶ 61–63, 74–77, 104–106) As to Davidson, the allegations are
unclear about the timing. (*Id.* ¶¶ 88–89) There are no allegations either way as to
Wheeler's receipt of the U.S. Rental Jacket. (*See id.* ¶¶ 111–127.) The Complaint
expressly alleges that Bacon never received a copy of Payless's "Terms and Conditions"
(i.e., the U.S. Rental Jacket) at all. (*Id.* ¶ 134).

[5]     I refer to this document as a "Jacket" for consistency with the U.S. Rental
Jackets; the term "jacket" does not actually appear anywhere in the Costa Rica
Agreement or the Costa Rica Rental Jacket.

illegible, at least in the Court's copy. The first English paragraph, titled "Parties," explains that only Lee and LCV are parties to the Costa Rica Agreement. (*See id.* ¶ 1)

The Costa Rica Rental Jacket includes a "Dispute resolution" clause, which purports to commit disputes to arbitration in Costa Rica:

> Every controversy or dispute that may be related to this agreement or its performance, liquidation or interpretation shall be resolved in accordance with the following procedure: 1) The parties shall resort to conciliation mechanisms in accordance with the Conciliation Regulations of the Center for Conciliation and Arbitration of the Chamber of Commerce of Costa Rica. If the Parties have not reached a conciliation agreement within fifteen business day following the conciliation request, the controversy or dispute shall be resolved by means of 2) Arbitration proceedings, in accordance with the Arbitration regulation of said center, to which rules the parties subject themselves unconditionally. The Arbitration Panel shall be composed of one member and resolve pursuant to law.

(Def. Cert. Ex. G, p.2, ¶ 19)

The plaintiffs allege that Lee did not receive a copy of the Costa Rica Rental Jacket until after she had signed the Costa Rica Agreement. (Compl. ¶ 150) The plaintiffs also allege that the version of the Costa Rica Rental Jacket furnished to Lee was a non-English copy (i.e., a version different from the bilingual one the defendants include in Exhibit G to their certification). (*Id.*)

## C.    **Avis's Role**

Avis is a New Jersey-headquartered company that operates Payless rental locations throughout the United States. (*Id.* ¶ 13) The Complaint alleges that Avis acquired Payless as a wholly owned subsidiary in 2013. (Compl. ¶ 11, 24) By that time, the plaintiffs say, Payless customers had lodged "thousands of on-line complaints" against Payless for its deceptive practices. (*Id.* ¶¶ 11, 13)

The plaintiffs do not allege that they ever dealt directly with Avis. Rather, citing a number of Avis's and Payless's public statements, they allege that Avis and Payless "combined operations, and [that] at all times material to this litigation, Avis directed and controlled the daily activities of Payless and totally dominated it, to the extent that Payless manifested no separate corporate interest of its own and functioned solely to achieve the purposes of Avis." (*Id.* ¶ 26, 27) The plaintiffs therefore contend that Avis and Payless, through their agents or personnel, together carried out the alleged deceptive practices, "act[ing] in concert with [] each other" and as "seamlessly integrated" companies. (*Id.* ¶¶ 29–31)

## II.  LEGAL STANDARD

This Circuit's case law has meandered somewhat in defining the proper standard of review of a motion to compel arbitration. The upshot, however, is fairly clear. Where the issue can be decided without evidence, it will be, based on an application of the familiar Rule 12(b)(6) standard to the face of the pleadings. Failing that, however, the Court will permit discovery and decide the issue on a summary judgment standard, pursuant to Rule 56. If there is a genuine issue of fact, summary judgment will be denied and the issues will be tried.

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. The judiciary must balance the competing goals of the FAA: the speedy and efficient resolution of disputes, and the enforcement of private agreements. *Id.* at 773. Reconciling sometimes murky precedent in light of those competing interests,

6

the *Guidotti* court reasoned that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74. Such an approach "appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, '[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." *Id.* at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3d Cir. 1979).

"In many cases, however, a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.*

> [The Rule 12(b)(6) standard will not be appropriate] when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.
>
> Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate and the non-movant must be given the opportunity to conduct limited discovery

on the narrow issue concerning the validity of the
arbitration agreement. In such circumstances, Rule 56
furnishes the correct standard for ensuring that
arbitration is awarded only if there is an express,
unequivocal agreement to that effect.

*Id.* at 774–76 (citations and quotations omitted).

Thus, where the complaint and supporting documents are unclear as to
an agreement to arbitrate, or where a plaintiff responds to a motion to compel
with additional facts sufficient to place the issue of arbitrability "in issue," then
the parties should be entitled to discovery. After limited discovery, a court may
then "entertain a renewed motion to compel arbitration" and should review
such a motion under the summary judgment standard. *Id.* at 776.

If summary judgment is unwarranted in light of material factual disputes
regarding an agreement's enforceability, a court should then proceed to trial
"regarding 'the making of the arbitration agreement or the failure, neglect, or
refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting
*Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474,
482 (E.D. Pa. 2011)). In every instance, "[b]efore a party to a lawsuit can be
ordered to arbitrate and thus be deprived of a day in court, there should be an
express, unequivocal agreement to that effect." *Id.* (quoting *Par–Knit Mills*, 636
F.2d at 54).

## III. DISCUSSION

### A. The Framework On Motions to Compel Arbitration

Federal law is decidedly pro-arbitration. The FAA's purpose is "to reverse
the longstanding judicial hostility to arbitration agreements that had existed at
English common law and had been adopted by American courts, and to place
arbitration agreements upon the same footing as other contracts." *Gilmer v.
Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647 (1991). Thus
the statute makes agreements to arbitrate "valid, irrevocable, and enforceable,"
9 U.S.C. § 2, subject only to traditional principles of contract formation and
interpretation. The FAA provides that contract provisions manifesting the
intent of the parties to settle disputes in arbitration shall be binding, allows for

8

the stay of federal court proceedings in any matter that is referrable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2, 3, 4.

Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer,* 500 U.S. at 24, 111 S. Ct. 1647 (quotations omitted). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S. Ct. 927 (1983).

The Supreme Court has recently given new content to that strong federal pro-arbitration policy. It is not much of an exaggeration to say that the Court implied that the states were promulgating facially neutral rules that are in fact intended to discriminate against agreements to arbitrate vis-à-vis other contracts:

> The FAA . . . preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the arbitration of a particular type of claim." . . . . And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements.

*Kindred Nursing Centers Ltd. P'ship v. Clark,* 137 S. Ct. 1421, 1426 (2017) (quoting *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 341, 131 S. Ct. 1740). Any consideration of State law, then, must bear in mind the *Kindred* preemption principle.

The fact remains, however, that arbitration is a creature of contract. Before referring any controversy to arbitration, the Court must determine whether the parties have indeed agreed to arbitrate it. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452, 123 S. Ct. 2402 (2003). That determination has three subparts: (1) whether the parties agreed to arbitrate; (2) whether the dispute is within the scope of the agreement; and (3) whether Congress

nevertheless intended the dispute to be non-arbitrable. *Sarbak v. Citigroup Global Markets, Inc.,* 354 F. Supp. 2d 531, 536–37 (D.N.J. 2004).

Because the parties point to no Congressional prohibition, only the first and second subparts are at issue here. As to the first, courts are to apply traditional principles of state contract law, while also keeping in mind "the strong federal policy in favor of arbitration." *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir. 1998). The second question is a matter of federal law. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 524 (3d Cir. 2009).

### B. The Parties' Arguments

An initial overview of the parties' arguments is helpful here. In broad strokes, the defendants argue that the arbitration provisions in all of the U.S. and Costa Rica Rental Jackets (collectively, the "Rental Jackets") are enforceable and that the plaintiffs' claims fall within the scope of the arbitration provisions. Further, they argue that the arbitration provisions require the plaintiffs to bring their claims on an individual, rather than class-wide basis. They also argue, under principles of agency and equitable estoppel, that non-signatory Avis can enforce the arbitration provisions in the U.S. Rental Jackets and that both Avis and Payless, as non-signatories, can enforce the arbitration provision in the Costa Rica Rental Jacket.

The upshot, the defendants conclude, is that all of the plaintiffs must submit their claims against Avis and Payless in arbitration, and on an individual basis—Lee in Costa Rica and the U.S. Plaintiffs in the United States.

The plaintiffs urge me to stop the defendants at square one. As they see it, the U.S. Agreements and the Costa Rica Agreement (collectively, the "Agreements") do not effectively incorporate by reference the Jackets or the terms and conditions therein, including the arbitration clauses. I agree that the incorporation-by-reference issue precedes all others. If plaintiffs are correct, there is no agreement to arbitrate at all, so issues of interpretation are moot.

10

## C. Choice of Law

The cars were rented in New Jersey, Nevada, Florida, and Costa Rica. A choice-of law issue therefore arises.

"[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton,* 475 F.3d 497, 499–500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020 (1941)). New Jersey uses the most-significant-relationship test, which consists of two prongs. *Maniscalco v. Brother Int'l Corp. (USA),* 793 F. Supp. 2d 696, 704 (D.N.J. 2011), *aff'd,* 709 F.3d 202 (3d Cir. 2013).

First, the court must determine whether a conflict actually exists between the potentially applicable laws. *P.V. v. Camp Jaycee,* 197 N.J. 132, 143, 962 A.2d 453, 460 (2008) ("Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them.") (internal quotations omitted). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.,* 792 F. Supp. 2d 712, 717 (D.N.J.2011) (quoting *P.V.,* 197 N.J. at 143, 962 A.2d at 453).

Second, if a conflict exists, the court must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in the applicable section of the Restatement (Second) of Conflict of Laws. For contract claims, the applicable Restatement section is § 188. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 134 N.J. 96, 102, 629 A.2d 885, 888 (1993). "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied . . . ." Restatement (Second) of Conflict of Laws § 188 (1971); *see also Spence-Parker v. Delaware River & Bay Auth.,* 616 F. Supp. 2d 509, 523 (D.N.J. 2009).

1. The U.S. Agreements and Rental Jackets

The parties agree that, as to the U.S. Agreements and Rental Jackets, the potentially applicable state laws are those of New Jersey, Nevada, and Florida.

I first look for any relevant conflict between local and foreign law. When there is no conflict between forum law and foreign law, the Court should default to forum law—here, the law of New Jersey. *Snyder*, 792 F. Supp. 2d at 717 (quoting *P.V.*, 197 N.J. at 143, 962 A.2d at 453).

Two issues are most pertinent to these motions to compel arbitration: whether the language of the arbitration provisions requires the party to submit to arbitration, and whether such language may be incorporated by reference from another document. As to waiver language, New Jersey requires an arbitration clause that is "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right" to a trial and a jury. *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 443, 99 A.3d 306, 313 (2014). Lurking in the background, however, is the issue of whether New Jersey's pre-*Kindred* standard might "fail[] to put arbitration agreements on an equal plane with other contracts," which would be grounds for FAA preemption. *Kindred Nursing Centers Ltd. P'ship*, 137 S. Ct. at 1426–27.[6]

But I set that aside because, as stated above, the threshold issue is incorporation by reference; unless the Agreements incorporate the Jackets, there is no agreement to arbitrate. As to incorporation by reference, New Jersey contract law requires that an extrinsic document "be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by

---

[6]     *Kindred* does not directly address the issue here, and therefore does not overrule pre-*Kindred* New Jersey Supreme Court case law, which has disclaimed any such discriminatory intent. Nevertheless, *Kindred* seems to signal a more aggressive approach to FAA preemption that considers the effect of state laws governing agreements to arbitrate. *Compare Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 639 F. App'x 824, 827 (3d Cir. 2016) (where District Court below held an arbitration clause unenforceable under *Atalese*'s clear waiver rule and New Jersey's doctrine of unconscionability, acknowledging the "important and challenging question" of whether the District Court's grounds "remain viable as not preempted by the [FAA]," but vacating with instruction on remand to resolve a factual dispute that might render those grounds unnecessary) *with Atalese*, 219 N.J. at 443–44 ("The requirement that a contractual provision be sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right is not specific to arbitration provisions. Rather, under New Jersey law, any contractual waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously to its terms." (internal quotation marks omitted) (collecting cases not related to arbitration provisions)).

the terms must have had 'knowledge of and assented to the incorporated terms.'" *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 533, 983 A.2d 604, 617 (App. Div. 2009) (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)). That standard, drawn from the authoritative Williston treatise, is based on fundamental principles of offer, acceptance, and mutual assent. It would not seem to be vulnerable to the *Kindred* objection that it singles out agreements to arbitrate or treats them differently from other contracts.

The parties seem to agree that New Jersey and Nevada law do not appreciably diverge as they relate to this case. Nevada's law does not seem to be well developed as to incorporation by reference, and neither party has come forward with any Nevada case sufficient to displace forum law. Therefore, as to Bacon, who rented a car in New Jersey, and as to Alexander, DeVries, and Davidson, who rented cars in Nevada, I will apply the law of the forum, New Jersey.

That leaves Florida, where Geary and Wheeler rented cars. As to general contract principles, Florida law is similar to that of New Jersey. "Under New Jersey law, a binding contract requires four things: an offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms." *Noble v. Samsung Elecs. Am., Inc*, No. 16-1903, 2017 WL 838269, at *2 (3d Cir. Mar. 3, 2017) (citations omitted). Under Florida law, those commonplace requisites of a binding contract are similar.[7]

The specific focus here, however, is whether there was "mutual assent" to incorporate the arbitration clauses in the rental jackets. As to incorporation by

---

[7]    *See Gibson v. Courtois,* 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract."); *Buck-Leiter Palm Ave. Dev., LLC v. City of Sarasota,* 212 So. 3d 1078, 1082 (Fla. Dist. Ct. App. 2017) (contract was formed where "the parties agreed upon essential and definite terms and that the parties intended for [the agreement] to be a binding contract."); *Nowlin v. Nationstar Mortg., LLC,* 193 So. 3d 1043, 1045 (Fla. Dist. Ct. App. 2016) ("A contract is made when the three elements of contract formation are present: offer, acceptance, and consideration. No person or entity is bound by a contract absent the essential elements of offer and acceptance." (quoting 11 Fla. Jur.2d *Contracts* § 25 (2016)).

reference of extrinsic documents or terms, Florida and New Jersey law may diverge somewhat, in that the Florida standard is arguably less strict. The incorporated document must be "sufficiently described,"[8] begging the question of what is "sufficient." Florida law does not, however, expressly state that the incorporated matter be identified "beyond doubt," as under New Jersey law. *See Quinn, supra.*

Having found at least an arguable conflict between New Jersey and Florida law, I consider the state-interests analysis, applying the Restatement factors. Those factors include where the contract was negotiated, where it was executed, where it was performed, the location of the contract's subject matter, and "the domicile, residence, nationality, place of incorporation, and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971).

Geary and Wheeler negotiated and executed the U.S. Agreements in Florida. They rented and picked up the cars from Payless locations in Florida. (Compl. ¶¶ 97, 111) When "the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Restatement (Second) of Conflict of Laws § 188 (1971). Nothing displaces that rule of thumb. Geary resides in Wisconsin and Wheeler resides in Illinois. (*id.* ¶¶ 17, 19) Payless is incorporated in Nevada, but maintains its principal place of business in New Jersey and conducts business from rental locations worldwide. (*Id.* ¶¶ 20–22) Neither party argues that New Jersey has a significantly greater interest than Florida solely by virtue of its being Payless's principal place of business. Nor do the remaining factors point strongly to any

---

[8]  To incorporate by reference a collateral document, the incorporating document must (1) specifically provide "'that it is subject to the incorporated [collateral] document'" and (2) the collateral document to be incorporated must be "'sufficiently described or referred to in the incorporating agreement'" so that the intent of both parties may be ascertained.

*Spicer v. Tenet Florida Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. Dist. Ct. App. 2014).

other state but Florida. I therefore apply to Geary's and Wheeler's claims the law of Florida, where the contract was negotiated, executed, and performed.

    2. <u>The Costa Rica Agreement and Rental Jacket</u>

The defendants offer no choice of law analysis for the Costa Rica Agreement and Rental Jacket. They cite United States Supreme Court precedent, or alternatively New Jersey law, for the proposition that Lee effectively agreed to arbitrate her claims in Costa Rica.[9] The plaintiffs argue only that as a matter of common sense, the Costa Rica Rental Jacket is not incorporated into the Costa Rica Agreement. Plaintiffs do not propose any alternative to the defendants' approach.

The obvious contenders would be the laws of New Jersey and the laws of Costa Rica. Neither party gave notice that it intended to raise an issue of Costa Rican law. *See* Fed. R. Civ. P. 44.1. On this motion, neither party argues that Costa Rica law applies. Therefore, the parties have waived the issue. *See Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440–41 (3d Cir. 1999) ("The parties therefore generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case. Where parties fail to satisfy either burden the court will ordinarily apply the forum's law." (citations omitted)); *Neely v. Club Med Management Services, Inc.,* 63 F.3d 166, 180 (3d Cir.1995) ("[L]ike a plaintiff's need to prove one or more of the specific statutory elements of his or her claims, choice of law issues may be waived."); *Guiuan v. Villaflor,* No. CIV. 7-6064, 2012 WL 3526681, at *2 n.4 (D.N.J. Aug. 15, 2012) ("Failure to provide [Rule 44.1] notice is grounds for waiver and empowers a court to apply the law of the forum."); *but see Huber v. Taylor,* 469 F.3d 67, 76 n. 12 (3d Cir. 2006) (noting inconsistent rulings by Third Circuit regarding whether choice-of-law issues are waivable, but declining to reach issue).

---

[9]    The defendants select New Jersey law based on the fact that Lee, along with Bacon and members of a putative "Unauthorized Add-Ons Subclass", brings a claim under the New Jersey Consumer Fraud Act. (*See* Def. Br. 18; Compl. ¶¶ 208-224)

Accordingly, I will apply New Jersey law to interpret the Costa Rica Agreement and Rental Jacket.

### D. **Whether the Parties Agreed To Arbitrate**

New Jersey and Florida law, then, govern the issue of whether the Agreements signed by the plaintiff customers effectively incorporated the arbitration clauses in the Jackets. Ordinary principles of state contract law determine the validity of an arbitration agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995).

As to the issue of mutual assent, I essentially decide as follows: The Rental Jackets are separate from the Agreements that the customers signed. The relevant arbitration language appears only in the Rental Jackets, not in the Agreements. There can be no mutual assent with respect to terms in a document that the parties do not understand to be part of the contract. The question whether these parties so understood the terms poses issues of fact—such as whether the Jackets were available for the customers' inspection when they signed the Agreements. On a Rule 12(b)(6) standard, I can go no further; to decide the arbitrability issues I will require a factual record and a summary judgment motion. *See* Section II, *supra*.

### 1. **New Jersey Law**

New Jersey requires a high degree of certainty before a separate document will be deemed to be incorporated by reference in a contract:

> In order for there to be a proper and enforceable incorporation by reference of a separate document, the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had "knowledge of and assented to the incorporated terms."

*Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 533, 983 A.2d 604, 617 (App. Div. 2009) (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)). Here, that means the Court can find that the parties agreed to arbitrate only if (a) the Agreements describe the Rental Jackets in such a way that it is clear beyond doubt that they were incorporated in the

Agreements, and (b) that the plaintiffs knew of, and assented to, the arbitration provisions in the Rental Jackets.

The plaintiffs contend they never agreed to arbitrate because the Agreements do not validly incorporate the Rental Jackets. Because their argument relies heavily on *Quinn, supra*, I discuss that case here. The *Quinn* defendants were clients of the plaintiff law firm who refused to pay certain late fees. The retainer letters signed by the clients referred to fees, but did not explicitly mention those particular late fees. One of the retainer letters purported to incorporate extrinsic "billing practices" and "policies": "*Details on any of these items and our policies will be provided to you upon request; whether or not you request them, you will be bound by our standard billing practices and firm policies in these and other regards, so feel free to ask.*" 410 N.J. Super. at 520 (italic emphasis added by the N.J. court). The clients did not inquire at the time about those "practices" and "policies." It was not until the billing dispute arose that the firm sent the clients a copy of the firm's "master retainer" agreement, which did disclose the late fees.

The firm argued that the reference to "standard billing practices and firm policies" in the retainer letter incorporated by reference the master retainer. The trial court agreed and awarded summary judgment to the firm, but the Appellate Division reversed. The Appellate Division reasoned first that the extrinsic document was not clearly identified. The retainer letters' general reference to policies and procedures "contained no document dates or an identifiable publication number," for example; the master retainer was "in no way specific or identifiable such that the [firm's] practices and policies [could] be ascertained beyond doubt." *Quinn*, 410 N.J. Super. at 535 (internal quotation marks omitted). Accordingly, "there [was] no indication that the terms of the proposed incorporated document were known or assented to by defendants." *Id.* at 535. "To the contrary," the court continued, "it [was] without dispute that defendants were not shown and did not see the [master retainer] document until" months later. *Id.*

Surely this case has some factual parallels to *Quinn*. But every contract must be examined "in light of the common usage and custom, and consider[ing] the circumstances surrounding its execution . . . ." *Pacifico v. Pacifico*, 190 N.J. 258, 267, 920 A.2d 73, 78 (2007); *see also Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282, 633 A.2d 531, 535 (1993) ("When reading a contract, our goal is to discover the intention of the parties. Generally, we consider the contractual terms, the surrounding circumstances, and the purpose of the contract."); *Oakwood Hills Co. v. Horacio Toledo, Inc.*, 599 So. 2d 1374, 1376 (Fla. Dist. Ct. App. 1992) ("[T]he court may consider the conduct of the parties through their course of dealings to determine the meaning of a written agreement.").

I therefore consider that the *Quinn* contract, unlike this one, was an attorney retainer agreement. The case took pains to explicate the special relationship between attorney and client, and the court's supervisory role with respect to attorney ethics. 410 N.J. Super. at 529.[10] I am mindful that the attorney-client relationship is very different from a one-shot commercial transaction between a car rental company and its customer, which does not involved a relationship of trust or confidence. Nevertheless, the courts have repeatedly applied *Quinn* outside the attorney-client context, rejecting attempts to distinguish it on that basis, and confirming that the principles it sets forth are rooted in the general contract law of New Jersey.[11] Standing on that

---

[10]     The *Quinn* court also determined that the firm, on the same facts, had violated Rule 1.5(b) of the Rules of Professional Conduct, which "requires an attorney to present a client the attorney has not regularly represented, in writing, at the time of retention, all of the fees and costs for which the client will be charged, as well as the terms and conditions upon which the fees and costs will be imposed." *Id.* at 532.

[11]     *See, e.g., Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC,* No. 16-207 (ES) (SCM), 2016 WL 6803081, at *9 (D.N.J. Nov. 16, 2016) (in dispute between car dealership and consulting firm, asset purchase agreement did not incorporate consulting agreement, under *Quinn*); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 866 F. Supp. 2d 315, 335 (D.N.J. 2011) (applying and declining to distinguish *Quinn* "on the basis of the fact that the plaintiff seeking to impose the incorporated terms was an attorney" because the *Quinn* "court was clear that the proposition regarding incorporation of absent terms by reference was a question of general contract law, not specific to the attorney-client relationship."), *vacated on other grounds*, 716 F.3d 764

18

foundation, then, I look to persuasive case law from other jurisdictions that deals more specifically with vehicle rental contracts like the one here.

As to the issue of incorporation by reference, the plaintiffs point to *State ex rel. U-Haul Co. of W. Virginia v. Zakaib*, 232 W. Va. 432, 443, 752 S.E.2d 586, 597 (2013). The *Zakaib* plaintiffs were renters of U-Haul equipment. Some of these renters signed a one-page rental contract that stated "I acknowledge that I have received and agree to the terms and conditions of this Rental Contract and the Rental Contract Addendum." Others, after viewing a rental contract on an electronic terminal, clicked "accept" in response to the prompt "By clicking Accept, I agree to the terms and conditions of this Rental Contract and Rental Contract Addendum." *Id.* at 436–37. In either case, the renter did not actually receive a copy of the "Rental Contract Addendum" until after he or she had signed the rental contract. *Id.* at 437.

The Addendums in *Zakaib* were fashioned into cardstock pamphlets that held documents and displayed advertisements and instructions for returning rented equipment. *Id.* The Addendum contained the title "Rental Contract Addendum" (the same terminology used in the incorporation language of the Contract). The text of the Addendum included the following guidance: "Additional Terms and Conditions for EQUIPMENT Rental, Place Rental Contract documents in this folder & keep available throughout your move." *Id.*

When the *Zakaib* plaintiffs sued U-Haul for assessing hidden charges, U-Haul moved to compel arbitration, based on an arbitration clause in the Addendum. The trial court denied the motion. The Supreme Court of West Virginia announced a standard for incorporation by reference ("unmistakable . . . beyond doubt") akin to that of New Jersey.[12] Applying that standard, it

---

(3d Cir. 2013); *see also James v. Glob. TelLink Corp*, 852 F.3d 262, 266 (3d Cir. 2017) (citing *Quinn* for the principle that incorporation by reference requires the party bound by the terms to have had knowledge and assented to the terms).

[12]     Specifically, the Supreme Court of West Virginia held:

> [[I]n the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another

19

affirmed the trial court's ruling that the Agreement did not effectively incorporate the arbitration clause in the Addendum:

> The reference to the Addendum is quite general with no detail provided to ensure that U–Haul's customers were aware of the Addendum and its terms, including its inclusion of an arbitration agreement. The lack of a detailed description is compounded by the fact that the Addendum itself was designed to look more like a document folder advertising U–Haul products, services, and drop-off procedures, rather than a legally binding contractual agreement. *Finally, and most troubling to this Court, is the fact that U–Haul's practice was to provide customers a copy of the Addendum only after the Rental Agreement had been executed.* Under these circumstances, there simply is no basis upon which to conclude that a U–Haul customer executing the Rental Agreement possessed the requisite knowledge of the contents of the Addendum to establish the customer's consent to be bound by its terms, which terms include the arbitration agreement sought to be enforced by U–Haul in this case

*Id.* at 444 (*italic* emphasis added).

Payless attempts to distinguish *Zakaib,* countering that the U.S. Agreements' reference to "terms&conditions" and "rental jackets" is clearer than the West Virgina contract's reference to the "Addendum," and that the U.S. Jackets were not camouflaged as brochures. The real rub, however, is the factor that the *Zakaib* court found critical—that the Addendum was not provided until *after* the renter had signed the Agreement. That factor is

---

> document is not sufficient to incorporate that other document into a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

*Id.* at 444.

allegedly present here as well. According to the complaint, the customers—i.e., the plaintiffs, or most of them— did not receive the Jacket until after they had signed the Agreement.

The *Zakaib* holding is buttressed by another case brought against Avis itself. *Kenner v. Avis Rent A Car Sys., Inc.*, 254 A.D.2d 704, 704–05, 678 N.Y.S.2d 213 (1998), involved an indemnification rather than an arbitration provision. As to the incorporation-by-reference issue, however, it is pertinent. There, Avis claimed that the relevant indemnification provision, which appeared only in a rental jacket, was incorporated in the plaintiff's rental agreement by reference. The New York appellate court applied a rule of incorporation similar to New Jersey's and affirmed the trial court' denial of Avis's motion for summary judgment:

> [T]he indemnification provision was contained in a separate jacket or folder that was admittedly not provided to plaintiff until after he signed the rental agreement. The doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be identified "beyond all reasonable doubt" (Matter of Board of Commrs., 52 NY 131, 134). There is a triable issue of fact whether the oblique reference in the rental agreement to an otherwise unidentified "rental document jacket" meets that exacting standard (cf., Shark Information Servs. Corp. v Crum & Forster Commercial Ins., 222 AD2d 251, 252) and thus whether the rental document signed by plaintiff gave him sufficient notice of the indemnification provisions included in the contents of the separate jacket

*Id.* at 704–705. Our case, like *Kenner,* allegedly involves the Avis agreement's "oblique" reference to a rental jacket, which in any event was not furnished until after the agreement was signed.

Payless does not try to distinguish *Kenner,* but undertakes to bury it in contrary authority. For example, in *Lucas v. Hertz Corp.,* 875 F. Supp. 2d 991, 998–99 (N.D. Cal. 2012), the plaintiffs rented a car in Costa Rica, at which time they signed a rental agreement that stated: "I have read the conditions on this

21

Contract as set forth in the FOLDER JACKET CR001 and its addendum DCLA001, DCL002, DCLA003, the contents of which I fully understand as explained to me, therefore I accept the conditions and execute this document in full conformity." *Id.* at 995. The court granted Hertz's motion to compel arbitration, explaining:

> As described above, the car rental agreement specifically referenced the folder jacket and the terms and conditions found in it and required Mr. Martin to acknowledge that he read and understood them. It also required him to agree that he accepted those terms and conditions and executed the car rental agreement in full conformity with them. *Mr. Martin declares that he either was never given a copy of the folder jacket or was given it after he signed the rental agreement, but this representation is immaterial because the terms of an incorporated document must only have been easily available to him; they need not have actually been provided.*

*Id.* at 998–99 (citations omitted; emphasis added).

The plaintiffs argue that the court's decision in *Lucas* hinged on California's laxer standard for incorporation by reference. And indeed, California law does not seem to adopt either the New Jersey "beyond doubt" standard or the requirement that the customer actually know of the particular relevant term contained in the incorporated document. Rather, California requires that the reference be "clear and unequivocal" and that the incorporated document, if not actually known, be "easily available."[13] The difference is not night-and-day, obviously, but it is significant. And *Quinn* itself,

---

[13] *Lucas* summarized California law as thus:

> "'For the terms of another document to be incorporated into the document executed by the parties[, (1) ] the reference must be clear and unequivocal, [ (2) ] the reference must be called to the attention of the other party and he must consent thereto, and [ (3) ] the terms of the incorporated document must be known *or easily available to the contracting parties.*'"

*Id.* at 998 (emphases added) (citing *Shaw v. Regents of University of California*, 58 Cal.App.4th 44, 54, 67 Cal.Rptr.2d 850 (1997)).

the case from which the parties draw the New Jersey standard, expressly distinguishes California law. *Quinn* string-cites federal and out-of-state cases that had adopted the Williston-derived requirement that it be beyond doubt that the customer knew of and assented to the incorporated terms. 410 N.J. Super. at 533–35. At the end of the string cite, *Quinn* adds a *"but see"* citation to a California case stating an "availability" standard similar to that later summarized in *Lucas. Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 4 Cal. Rptr. 3d 179, 184-85 (2003) ("For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.")). Thus *Quinn* itself drew a distinction between its own standard and the California imputed-knowledge standard of cases such as *Lucas, supra. See also* n.13, *supra.*[14]

New Jersey's focus on the parties' knowledge of the incorporated terms, as opposed to general knowledge of the existence of the incorporated document, is also telling. To me it suggests that the Rental Jackets were incorporated by reference into the Agreements only as to those plaintiffs, if any, who had knowledge of the relevant term—*i.e.*, the arbitration provision—at the time they signed the Rental Agreements. True, the U.S. Agreements' reference to "all notices&terms here and in the rental jacket" may have made the existence of *some* other terms obvious.[15] Still, when they signed the U.S.

---

[14]    The defendants also urge me to consider, *inter alia, Benson v. Budget Rent A Car Sys. Inc.*, No. 08-CV-4512, 2011 WL 4528334, at *4 (E.D. Pa. Sept. 29, 2011), in which a federal court in the Eastern District of Pennsylvania held on summary judgment that a rental agreement similar to the U.S. Plaintiffs' incorporated a rental jacket. There, however, the court noted that the customer "received and read" the rental jacket. That fact is at issue on this motion to dismiss.

[15]    The Costa Rica Agreement does not call attention to the existence of another document whatsoever and thus clearly fails to incorporate the Costa Rica Rental Jacket. Lee alleges in any event that she did not receive the Jacket until after she had signed the Costa Rica Rental Agreement. (Compl. ¶ 150)

Agreements, most or all of the U.S. Plaintiffs allegedly did not clearly know what those terms, including the arbitration clause, consisted of. Such facts, if proven, may be fatal to a claim of incorporation.

New Jersey's incorporation-by-reference rule is in tension—but not, I think, in conflict—with the hornbook principle that "a party accepting an offer has an absolute duty to read and understand the terms of an offer, and failure to do so will not diminish the force and effect of the resulting contract." *66 VMD Assocs., LLC v. Melick-Tully & Assocs., P.C.*, No. A-4008-09T3, 2011 WL 3503160, at *6 (N.J. Super. Ct. App. Div. Aug. 11, 2011). Under New Jersey law, for example, a defendant has no obligation to alert a plaintiff to the existence of an *un*-hidden arbitration provision in a document; "[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." *Gras v. Assoc's First Capital Corp.*, 346 N.J. Super. 42, 56, 786 A.2d 886 (App. Div. 2001) (internal quotation and citation omitted).

At most, however, this hornbook principle suggests that knowledge may be imputed under limited circumstances. For knowledge to be imputed, however, the renter must have been given the incorporated document or specifically directed to it in such a way that that there was a real opportunity to read its terms. I would not impute knowledge where a plaintiff has merely been told that some other document, location and contents unknown, which will be furnished after the contract is signed, is incorporated by reference.

This is just another way of saying that effective incorporation by reference requires that, in advance of signing the contract, the renter must have been able to identify beyond doubt the precise document that is referred to, and to ascertain the contents of the relevant terms. Otherwise, a party cannot truly be said to have assented to the incorporated terms.[16]

---

[16]    Other cases cited by the defendants cite are distinguishable, as the plaintiffs urge (see Sur-Reply 2–4). Principally, those other cases did not address incorporation by reference at all; involved plaintiffs that had read or been given the opportunity to

With all of these principles in mind, I find that I cannot, on a motion to dismiss standard, grant defendants' motion to compel arbitration of the claims of Bacon, DeVries, Alexander, Davidson, and Lee. The complaint alleges, albeit with varying degrees of clarity, that all five of these plaintiffs received the Rental Jackets for the first time after they had signed the Agreements. (Compl. ¶¶ 63, 77, 89, 134, 150)[17] The Costa Rica Jackets contain no reference to any external terms and conditions. And the U.S. Agreements, while referring in general to extrinsic terms and conditions, did not reveal the arbitration clauses or any other terms contained in the U.S. Rental Jackets. "[A]rbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774.

Discovery might yield facts supporting the arbitrability of the U.S. Plaintiffs' claims. For example, if the defendants could show that the U.S. Plaintiffs received, or were specifically directed to, the U.S. Jackets before signing the U.S. Agreements, I might be inclined to grant a motion for partial

---

review the incorporated terms; or involved plaintiffs that had been specifically made aware of an arbitration waiver in the incorporated document.

Still others involved a contract between two sophisticated merchants who could be presumed to understand standard industry practices. *Cf. Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n.10 (3d Cir. 2003) (finding that a sales agreement incorporated accepted industry guidelines by reference even though the guidelines were not provided to the plaintiffs, but noting that "[i]f the matter here involved a non-merchant individual as the product buyer, or if the reference to arbitration had been buried, the analysis might very well be different. . . . It is appropriate to require a merchant to exercise a level of diligence that might not be appropriate to expect of a non-merchant."); *see also G & G Builders, Inc. v. Lawson*, 238 W. Va. 280, 794 S.E.2d 1, 9–10 (2016) ("*Standard Bent Glass* clearly suggest[s] that transactions between experienced business entities are to be viewed differently from those that do not, particularly when the business entity against whom arbitration is sought was already familiar with the arbitration requirements, either through previous business dealings between the parties or industry practice."). These car rental agreements, by contrast, involve transactions between a sophisticated commercial entity and an ordinary consumer.

[17]     The allegations concerning Davidson are more equivocal than those concerning Bacon, DeVries, and Alexander. Construing the Complaint in the light most favorable to the plaintiffs, however, I read it to allege that Davidson was not provided with a copy of the U.S. Rental Jacket until after he had signed the U.S. Agreement.

summary judgment and to compel arbitration. As it stands now, however, the defendants' motion must be denied under the New Jersey standards that apply to the New Jersey, Nevada, and Costa Rica transactions. Discovery should go forward as to all, so that the matter can be postured for summary judgment. *See* Section II, *supra*.

### 2. Florida Law

The plaintiffs concede that Florida's incorporation-by-reference standard is not, on its face, as exacting as New Jersey's. In particular, they point to Florida's lack of a "beyond doubt" standard. Nevertheless, the plaintiffs argue, they cannot be compelled to arbitrate the claims of Geary and Wheeler. Florida law still requires that the incorporated document be "sufficiently described or referred to in the incorporating agreement," (Opp. 34 (quoting *BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2011)). The language in the U.S. Agreements, say the plaintiffs, fails to meet that somewhat lower standard. I find that, on the facts as alleged, the difference in the standard does not require a different result, and I will deny the motion to compel arbitration as to those two Florida customers.

Under Florida law:

> To incorporate by reference a collateral document, the incorporating document must (1) specifically provide "'that it is subject to the incorporated [collateral] document'" and (2) the collateral document to be incorporated must be " 'sufficiently described or referred to in the incorporating agreement'" so that the intent of both parties may be ascertained.

*Spicer v. Tenet Florida Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. Dist. Ct. App. 2014).

In *Spicer*, the plaintiff's employment agreement with the defendant contained the following incorporation-by-reference clause: "you agree that any and all disputes regarding your employment with [the defendant], including disputes relating to the termination of your employment, are subject to the Tenet Fair Treatment Process ["FTP"], which includes final and binding arbitration." *Id.* at 164. The agreement also stated, "If you have any questions,

please [] feel free to contact [] me in the Human Resources Department at [phone number]." The defendants did not provide the plaintiff with a copy of the FTP until seventeen days after the plaintiff had signed the employment agreement. When the plaintiff filed a lawsuit under Florida's Whistleblower Act, the defendants moved to compel arbitration pursuant to the terms of an arbitration provision in the FTP. A Florida appeals court held that the employment agreement did not incorporate the FTP, explaining:

> [M]erely providing a telephone number in a document for a party to call "if you *have any questions" is not sufficient to meet *the requirement of giving the location of a document to be incorporated by reference*.

> We conclude that the employment agreement, standing alone, did not contain a legally sufficient arbitration agreement because it failed to set forth some procedures by which arbitration was to be effected. Although the employment agreement clearly stated that any and all disputes were "subject to" the FTP, the FTP was *not sufficiently described in the employment agreement or attached and no location was given as to where the FTP could be found*.

*Id.* at 167–68 (emphasis added).

On the facts before me, the standard applied in *Spicer* yields the same result as the New Jersey standard. The plaintiff must receive an incorporated document, or else clear direction on how to access it, prior to signing the agreement that allegedly incorporates that extrinsic document. Construing the Complaint in the light most favorable to the plaintiffs, Payless failed to provide Geary and Wheeler with the necessary access here.

*Spicer* relied on *BGT Group, Inc. v. Tradewinds Engine Services, LLC,* 62 So. 3d 1192, 1193 (Fla. Dist. Ct. App. 2011). There, a Florida appeals court denied a motion to compel arbitration when the arbitration provision appeared in terms and conditions that were referred to in a purchase order but not actually provided to the plaintiff until the plaintiff filed its breach-of-contract action. The purchase order stated: "ALL QUOTATIONS, INVOICES AND ORDERS ARE SUBJECT TO THE ATTACHED BGT TERMS AND CONDITIONS."

*Id.* at 1194. The court reasoned that "cases finding sufficient description of a collateral document to create an incorporation by reference involve more detailed descriptions of the collateral document, or where the document could be found . . . ," *Id.* at 1195, citing two examples:

> [I]n *Kaye v. Macari Building & Design, Inc.,* 967 So.2d 1112, 1113 (Fla. 4th DCA 2007), the collateral document was described as "The American Institute of Architects Documents No. A–201, April 1997 Edition," an industry standard. And in *Avatar Properties, Inc. v. Greetham,* 27 So.3d 764, 766 (Fla. 2d DCA 2010), although a home warranty was not attached to a purchase and sale agreement, "the agreement state[d] that the warranty was available for examination at [the seller's] offices and, that upon request the warranty would be attached as an exhibit to the purchase and sale agreement."

*Id.* at 1195. Again, if this does not state a standard consistent with that of New Jersey, I nevertheless read it as producing a similar result.[18]

Here, the complaint alleges that Geary did not receive the U.S. Rental Jacket until "after the transaction was completed," i.e., after she initialed the U.S. Agreement. (Compl. ¶¶ 106–106) The Complaint does not indicate either way whether Wheeler received the U.S. Rental Jacket at all. There are no surrounding facts about whether the contents of the Jacket were otherwise made available. Therefore, under Florida law, the limited record before me fails to make clear that Geary's and Wheeler's claims are arbitrable, and I will deny Payless's motion pending further development of the factual record.

---

[18] Florida's "availability" standard made a difference, however, in *Access Telecom, Inc. v. Numaxx World Merchants, LLC,* No. 1:13-CV-20404, 2013 WL 12108129, at *7 (S.D. Fla. Nov. 25, 2013) (terms and conditions were incorporated by reference into purchase order in part because "[t]he Purchase Order specifically provide[d]: 'Please visit our website for terms and conditions at www.numaxx.com that govern this transaction. . . . [and] a reasonable user could easily navigate to the Terms and Conditions through only one mouse click from the homepage."). *See also Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.,* 920 So. 2d 1286, 1288 (Fla. Dist. Ct. App. 2006) (no incorporation by reference where contract stated it was "subject to all of [defendant's] terms, conditions, user and acceptable use policies located" . . . at a stated website," but "no printed version of the policies allegedly located at that website was attached to the contract" or subsequently provided to the plaintiffs).

*   *   *

Because I will not compel arbitration of any of the plaintiffs' claims at this time, I will not now address the defendants' arguments concerning the non-signatories' ability to enforce the arbitration provisions and whether the arbitration provisions mandate bilateral rather than class-wide arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motions to compel arbitration (ECF Nos. 16–17) are **DENIED** as presented. That being the case, there must be discovery so that the motion to be compel can be decided on a summary judgment standard. *See* Section II, *supra.* At their earliest mutual convenience, the parties shall set up a conference with Magistrate Judge Clark and work out a schedule of phased discovery. The first phase should focus primarily on arbitrability. At its conclusion, I will accept **one** joint motion for partial summary judgment on the issue of arbitrability from the defendants. The plaintiffs, if they wish, may cross-move for partial summary judgment on the same issue.

Dated: June 9, 2017

HON. KEVIN MCNULTY, U.S.D.J.